S13A0070. AUSTIN v. BANK OF AMERICA, N.A.
(743 SE2d 399)

BENHAM, Justice.

This appeal arises from the efforts of appellee Bank of America, N.A. ("Lender") to enforce the terms of the promissory note and deed to secure debt executed in its favor by appellant Johntá M. Austin ("Borrower"). Lender sued to collect the debt it claims the Borrower owes as a result of default, including attorney fees, and the trial court awarded summary judgment to Lender. This Court has jurisdiction in this case because the constitutionality of a statute has been drawn in question. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II.

It is undisputed that on or about November 24, 2008, Borrower executed the promissory note, deed to secure debt, and other loan documents pursuant to which Lender extended a loan in the principal amount of $1.62 million to finance the purchase of a home. It is also undisputed that Borrower failed to remit monthly payments due on the loan commencing with the payment due for November 2010, that Lender advanced funds to satisfy certain liens that were filed against the property as a result of Borrower's failure to pay real property taxes due on the property that secured the loan, and that Borrower executed a warranty deed transferring title to said property to a third

party without the necessary notice to and consent of the Lender as required by the loan documents. Non-payment of installment obligations when due, failure to pay taxes and discharge tax liens, and transfer of interest in the property that secures the loan without Lender's prior written consent are events of default pursuant to the terms of the loan documents.

By letter dated April 25, 2011, Lender provided notice that the loan was in default as a result of Borrower's failure to make six monthly payments that were then due and owing ("payment default") and was also in default for failure to pay 2009 and 2010 real property taxes that purportedly had resulted in the filing of four liens against the property that secured the loan ("tax lien default"). The April letter set forth the total amount of the delinquency and that Lender intended to enforce the provisions of the loan documents regarding payment of attorney fees. The April letter further provided notice that, pursuant to OCGA § 13-1-11, Borrower had ten days from receipt of the notice to pay the amount of the delinquency in full in order to avoid liability for Lender's attorney fees, that failure to pay within said time period would result in Borrower's liability for paying attorney fees to become fixed as to the amount of the delinquency, and that payment within said time period would relieve Borrower from liability to pay attorney fees. The April letter stated that the payment default could be cured by paying the amount due, plus attorney fees if the default was not cured within ten days of receipt of the letter. It provided notice that failure to cure the default on or before May 30, 2011 (which was 35 days from the date of the letter) could result in acceleration of all sums owed and a foreclosure sale of the property. It further gave notice of the right to reinstate the loan after acceleration, pursuant to the terms of the loan documents.

Lender, by and through its attorney, sent another default letter dated May 20, 2011, that referenced the defaults set forth in the April letter. The May letter further advised Borrower he was in default as a result of an unauthorized transfer of the property by warranty deed to a third party, in violation of the terms of the security deed ("due on sale default"). The May letter notified Borrower that Lender was thereby accelerating the full amount of the indebtedness pursuant to the terms of the security deed. It further notified Borrower that if he remitted the amount due for the payment default and the amounts due for satisfaction of the tax lien default, along with attorney fees calculated pursuant to OCGA § 13-1-11 by May 30, 2011, then Borrower would have until June 17, 2011 to repay the full amount of the indebtedness. Although the terms of the security deed required 30 days notice of acceleration for the due on sale default, this was a date less than 30 days from the date of the May letter.

·Lender's attorney sent a final default notice by letter to Borrower dated June 2, 2011, referencing the defaults set forth in the April and May letters. In the June letter, Lender gave notice of acceleration of the full amount of the indebtedness for Borrower's failure to cure the payment default set forth in the April letter. The June letter set forth the total amount of indebtedness due as of June 1, 2011, and the per diem interest due for each day thereafter. The June letter again provided notice that Borrower intended to enforce its right to collect attorney fees pursuant to the loan documents and again provided Borrower with ten days in which to pay the full amount due in order to avoid liability for attorney fees, but notified Borrower that if not paid within ten days the liability for attorney fees would become fixed.

When Borrower failed to cure the default, Lender filed suit to collect all amounts due. The complaint also contained a paragraph purporting to provide Borrower with notice, pursuant to OCGA § 13-1-11, that Borrower could avoid liability for attorney fees by paying the indebtedness in full within ten days of receipt of the complaint. Borrower failed to satisfy the amounts claimed by Lender, and the trial court ultimately entered summary judgment against Borrower in the amount of $1,700,059 in principal and accrued interest, $40,959.37 for amounts advanced by Lender to satisfy tax liens, and attorney fees in the amount of $170,030.90 pursuant to OCGA § 13-1-11.

1. We first address Borrower's second enumeration of error asserting Lender was not entitled to summary judgment for damages allegedly due pursuant to the loan documents because Lender failed to comply with certain conditions precedent to its right to bring a collection action. Borrower asserts that all three of the notice letters were deficient to provide him with the notice and opportunity to cure to which he was contractually entitled before Lender could sue to enforce its contractual rights.

Lender's right to accelerate the debt for breach of the covenant not to transfer the property that secured the loan without Lender's written consent is governed by Section 18 of the deed to secure debt, which requires notice of acceleration and a period of no less than 30 days to cure. Section 22 of the deed to secure debt sets forth the specific notice Lender was required to give Borrower prior to acceleration of the debt due to Borrower's breach of any other covenant in the deed to secure debt. Such notice was required to specify:

(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that

failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property [that secures the debt]. The notice shall further inform Borrower of the right to reinstate after acceleration.

Section 22 further provides that if the default was not cured by the specified date, Lender could require immediate payment in full of all sums secured by the security deed without further demand and could pursue any other remedies permitted by law. Section 22 also authorizes Lender to collect all expenses incurred in pursuing the remedies provided in said section including attorney fees.

The issue of the sufficiency of notice required by a contractual provision of a contract is a question of law for the court. *Great Central Ins. Co. v. Bowery Savings Bank*, 142 Ga. App. 630, 631 (1) (236 SE2d 772) (1977). As demonstrated by the recitation of the relevant contents of the April, May and June letters set forth above, these letters met the notice requirements specified in Section 22 of the deed to secure debt with respect to notice of payment default. Borrower was given notice of the payment default and Lender's right to acceleration of the debt as of April 25, 2011, and, based on the three notices he received, his last day to cure the payment default without the imposition of attorney fees was June 17, 2011. Because these letters advised Borrower of all that was required by the terms of Section 22 of the security deed with respect to payment default, it matters not whether, as Borrower claims, the April letter provided insufficient notice of the tax lien default by failing to properly identify such liens. Compare *Salahat v. FDIC*, 298 Ga. App. 624 (1) (680 SE2d 638) (2009) (although the note required notice and ten-day opportunity to cure before the lender could accelerate the note, it also established that the principal and interest became immediately due upon default without notice; thus written notice of default was all that was required and a notice letter that demanded immediate payment was sufficient to permit the lender to accelerate and collect all sums due after the expiration of the ten-day cure period). Similarly, it does not matter whether, as Borrower claims, the May letter provided insufficient notice and opportunity to cure the due on sale default by specifying a date to repay the full amount of indebtedness that was less than 30 days from the date of the letter, as required by Section 18 of the deed to secure debt, or whether the June letter provided insufficient notice of acceleration of the full amount due because it relied upon and referred to the notices given in the April and May letters. But compare *MPP Investments, Inc. v. Cherokee Bank, N.A.*, 288 Ga. 558 (3) (707 SE2d 485) (2011) (even though the note that

provided for acceleration of the debt upon payment default did not require the lender to give notice of default, the lender was not entitled to exercise the power of sale contained in the deed to secure debt because that document required 60 days notice to do so which the lender did not give). Because Borrower failed to cure the payment default after receiving timely notice of said default, the loan documents provided Lender the right to accelerate and file suit to collect all amounts owed.

Finally, Borrower argues Lender is not entitled to an award of attorney fees pursuant to OCGA § 13-1-11 because, by demanding attorney fees as part of the amount necessary to cure the payment and tax lien defaults if the fees were not paid within ten days, the notice of default letters purported to demand more than Lender was authorized to demand under Section 22 of the deed to secure debt. In other words, Borrower claims Lender's right to recover fees did not become ripe until the default cure period expired and thus Lender could not demand payment of fees as part of the cure for default. We reject this argument.

When read and construed together, OCGA § 13-1-11 and Section 22 of the deed to secure debt permit Lender to require payment of the attorney fees due under the code section in addition to payment of the debt that had matured in order to cure the default if payment was made after the expiration of ten days, provided Lender had complied with the condition precedent of giving the notice required by the contract and the statute.[1] Pursuant to OCGA § 13-1-11 (a) (3), the holder of a note may recover attorney fees pursuant to this statute if, "after maturity of the obligation," the holder notifies the obligor in writing that the holder intends to enforce the attorney fees provisions of the note and that the obligor has ten days from the date of such notice to pay the principal and interest due in order to avoid the obligation to pay attorney fees. In this case, the note obligates Borrower to pay each monthly principal and interest payment when due and thus the obligation to pay the delinquent monthly payments under the note had matured at the time Lender sent the April letter containing the statutory notice of intent to seek attorney fees. Borrower failed to satisfy the matured principal and interest due on the delinquent payments within ten days of any of the demand letters. Consequently, after the expiration of ten days, Borrower's total

---

[1] By operation of law OCGA § 13-1-11 becomes a part of all promissory notes "and all such instruments must be construed in the light of this particular section." *Anderson v. Hendrix*, 175 Ga. App. 720, 722 (3) (334 SE2d 697) (1985).

obligation included the matured principal and interest obligation as well as attorney fees pursuant to OCGA § 13-1-11.

The instructions for curing the payment default contained in the April letter, requiring payment of the amount of the delinquency on or before the date specified in the letter, which exceeded and thus complied with the 30-day cure period provided by the deed to secure debt, in addition to attorney fees if not cured within ten days of receipt of the letter, did not violate the provisions of the deed to secure debt. Likewise, these instructions did not violate the provisions of OCGA § 13-1-11. Under the facts of this case, even if Borrower had cured the payment default within the thirty-day cure period he would have been liable for attorney fees pursuant to OCGA § 13-1-11 if the matured debt obligation for the payment defaults was not paid within the ten-day requirement of the statute.

Pursuant to Section 22 of the deed to secure debt, "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by [the security deed] without further demand . . . and any other remedies permitted by [a]pplicable [l]aw." Thus, Lender was entitled to seek and collect payment in full of all sums owed pursuant to the note, including attorney fees, because the April letter, and each succeeding letter that referenced it, provided sufficient notice for Lender to do so. Lender complied with the notice required by contract and by OCGA § 13-1-11 and thus satisfied the condition precedent to enforce its right to collect attorney fees. See *Strickland v. Williams*, 215 Ga. 175 (109 SE2d 761) (1959). Accordingly, summary judgment to Lender on the amounts due under the note is affirmed.

2. Having concluded that Lender was entitled to file suit and recover the sums owed pursuant to the note, we now address Borrower's assertion that, nevertheless, the award of attorney fees pursuant to OCGA § 13-1-11 should be reversed because, in this case, the award represents an unconstitutional penalty.[2] Borrower starts with the assumption that the fees awarded in this case constitute punitive damages simply because of the magnitude of the difference between the fees actually incurred and the award. To arrive at this

---

[2] The contract in this case was dated prior to July 1, 2011, and thus the 2012 amendment to OCGA § 13-1-11 adding subsection (b) is inapplicable to this case. See Ga. L. 2012, p. 1035, § 3/SB 181. Pursuant to subsection (b), when application of this Code section results in an award of attorney fees in excess of $20,000, the party required to pay may seek a hearing to determine the reasonableness of the fees. We reject Borrower's argument that this statutory amendment demonstrates that the Legislature recognizes the constitutional deficiency he asserts in this appeal.

assumption Borrower analogizes the fee award in this case to statutorily authorized treble damages for intentional violation of the Fair Business Practices Act (see OCGA § 10-1-399 (c)) and violation of the Georgia RICO Act (see OCGA § 16-14-6 (c)). Relying upon language of the Court of Appeals of Georgia in *Simpson Consulting, Inc. v. Barclays Bank, PLC*, 227 Ga. App. 648, 655 (490 SE2d 184) (1997) (applying the Georgia RICO Act), overruled by *Williams General Corp. v. Stone*, 279 Ga. 428 (614 SE2d 758) (2005), stating "the purposes of treble damages and punitive damages are substantially the same," Borrower asserts that the treble damages awarded by these statutes is equivalent to punitive damages. From this he extrapolates that because the attorney fees awarded in this case are more than treble the amount of the fees incurred, they must be treated as punitive damages for purposes of determining whether they pass constitutional muster. Borrower contends that the attorney fees award violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Georgia Constitution of 1983, Art. I, Sec. I, Par. I.[3]

First, we note that, in the quoted language relied upon by Borrower, the Court of Appeals in *Simpson* was analogizing treble damages and punitive damages primarily for the purpose of determining the standard of proof to be applied to these two types of damages. Id. This holding was reversed by this Court in *Williams*, supra, noting that the purpose of treble damages in the Georgia RICO Act is distinct from the purpose of punitive damages, also provided by that Act. The Georgia RICO Act at OCGA § 16-14-6 (c) provides that an injured person "shall have a cause of action for three times the actual damages sustained, and, where appropriate, punitive damages." Thus, the legislature must have intended treble damages to be a type of damages that may be recovered other than and in addition

---

[3] Borrower also relies upon case law addressing the constitutionality of excessive punitive damages awards in tort actions. See, e.g., *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U. S. 408 (123 SCt 1513, 155 LE2d 585) (2003) (holding a jury award of $145 million punitive damages for a claim that an insurance company engaged in bad faith conduct in its handling of the liability claim filed against its insured was grossly excessive for the compensatory damages award of $1 million and was thus reversed on the ground that it represented a grossly excessive or arbitrary punishment prohibited by the Due Process Clause of the Fourteenth Amendment of the United States Constitution); *BMW of North America, Inc. v. Gore*, 517 U. S. 559 (116 SCt 1589, 134 LE2d 809) (1996) (after considering and applying various factors, holding the award of $2 million punitive damages for a fraudulent misrepresentation claim was grossly excessive for the compensatory damages award of $4,000 and transcended permissible constitutional limits). These cases, however, involve jury awards of damages that are expressly punitive. Borrower has cited no authority, and we have found none, that apply a *Gore*-based analysis to a case in which attorney fees or any other damages were awarded pursuant to a mandatory statutory formula. We decline to apply such an analysis to the attorney fees in this case that were calculated and awarded by operation of statute.

to punitive damages. At least for the purposes of analyzing whether an award of attorney fees pursuant to a statutory formula constitutes punitive damages that must be subjected to a due process analysis, we reject the assertion that an award in excess of three times the actual fees incurred is necessarily punitive. Instead, as more fully set forth below, we find the award of attorney fees in this case does not constitute an award of punitive damages that must be subjected to a due process analysis.

Borrower also asserts the award of attorney fees in this case must be reversed because it results in a windfall to Lender since the damages awarded exceed the actual fees incurred. As Borrower points out:

> The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed.

*Redman Dev. Corp. v. Piedmont Heating & Air Conditioning, Inc.*, 128 Ga. App. 447, 451 (3) (197 SE2d 167) (1973) (citations and punctuation omitted). See also OCGA § 13-6-1. Borrower contends the attorney fee award in this case is contrary to longstanding law regarding the damages that may be recovered in a breach of contract case because it exceeds the amount required to place Lender in the position it would have been in had Borrower not breached the terms of the loan documents. This does not, however, make the award punitive or exceed the measure of damages permitted in a breach of contract case. In fact, the intent of the statute is to permit the debtor to avoid the penalty of having to perform the contractual obligation of paying attorney fees.

In *Radioshack Corp. v. Cascade Crossing II, LLC*, 282 Ga. 841, 845 (653 SE2d 680) (2007), this Court stated "[t]he purpose of OCGA § 13-1-11 is to prevent a contractual provision for attorney's fees from constituting a penalty for failure to pay an indebtedness."[4]

---

[4] The *Radioshack* opinion was issued in response to a certified question from the Eleventh Circuit Court of Appeals asking whether OCGA § 13-1-11 applied to the contract in that case, which arose out of a breach of a commercial lease, and limited what would otherwise be the full amount of attorney fees that could be awarded pursuant to the contract. This Court answered by ruling that the phrase "evidence of indebtedness" as used in OCGA § 13-1-11 was to be broadly construed to encompass leases. 282 Ga. at 845.

Relying upon this language, Borrower argues the effect of OCGA § 13-1-11 in this case is directly contrary to its intent because, in this case, the application of the statute results in an award in excess of actual fees incurred whereas in the *Radioshack* case, application of the statute limited the award to an amount less than the fees actually incurred. The above-quoted language, however, does not establish that application of OCGA § 13-1-11 in this case is contrary to its intent. The significance of this language regarding the purpose of the statute was not that it limits the amount of the award but that it provides the debtor an option to avoid payment of attorney fees at all. The contract between the parties in this case contained an attorney fees provision whereby Lender was entitled to seek attorney fees and costs incurred in collecting the debt. Because Lender invoked the statute in its notice and demand for payment, this invocation provided Borrower with the opportunity to avoid this contractual obligation by paying the debt within ten days. Thus, even in this case, application of the statute served the purpose of preventing the attorney fees provision of the contract from constituting a penalty for failure to pay the indebtedness.

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). In *General Electric Credit Corp. v. Brooks*, 242 Ga. 109 (249 SE2d 596) (1978), this Court engaged in a detailed examination of the history and intent of OCGA § 13-1-11 and its predecessor statutes and determined that the penalty represented by the contractual obligation to pay attorney fees for failure to pay indebtedness is precisely " 'the evil at which the act was directed.' " Id. at 113 (quoting *Demere v. Germania Bank*, 116 Ga. 317 (42 SE 488) (1902)). In *General Electric*, this Court noted that pursuant to the common law of Georgia, prior to passage of the first statute in this arena, attorney fees provisions in instruments of indebtedness were regularly enforced. Id. at 112. In 1891, the legislature enacted a statute pursuant to which all such provisions were deemed void and unenforceable "unless a plea or pleas be filed by the defendant and not sustained." Ga. L. 1890-91, p. 221. This permitted recovery of attorney fees in connection with the collection of a debt "only if the debtor actually litigated the debt and was not vindicated." *General Electric*, 242 Ga. at 113.

Authorization for the creditor to collect attorney fees after giving the debtor notice and an opportunity to pay the debt first arose in a 1900 amendment to the 1891 statute providing that attorney fees were void unless " 'the holder of the obligation sued upon, his agent or attorney notifie(d) the defendant in writing ten (10) days before suit [was] brought of his intention to bring suit, and also the term of

court to which suit will be brought' " and the debtor failed to pay on or before the return day of court. Ga. L. 1900, p. 53. As this Court noted in *General Electric*, the 1900 statute was clearly more favorable to the creditor and signaled a change in the legislative intent from that of preventing collection of attorney fees provided for in a note, unless the debtor asserted an unsuccessful defense to the debt in court, to a scheme that permitted collection so long as the creditor gave the debtor the required statutory notice and opportunity to pay the debt to save the creditor the necessity and expense of filing suit. Id. (quoting *Harris v. Powers*, 129 Ga. 74, 87 (58 SE 1038) (1907)). Construing the version of the statute then in effect, Georgia Code Ann. § 20-506, which is virtually identical in all relevant respects to the version of OCGA § 13-1-11 that is applicable to this case, this Court in *General Electric* concluded: "The present [code section] is clearly intended to require the creditor to give the debtor an opportunity to meet his obligation without incurring additional expenses in the nature of attorney fees." *General Electric*, 242 Ga. at 114.

Applying this construction to the facts of this case, it is obvious Borrower was afforded the opportunity to avoid the "evil" of his contractual obligation to pay Lender's attorney fees by paying the debt within the statutorily provided time period. Even in this case, OCGA § 13-1-11 does not impose a penalty; it provides Borrower with an option to avoid the contractual obligation to pay any attorney fees to Lender. That the statutory formula applied to the debt in this case resulted in an award in excess of actual fees incurred does not provide a ground for ignoring this mandatory statute or forbearing its enforcement.[5] This Court has held "that attorney fees sought under OCGA § 13-1-11 are mandatory where the statute's conditions have been clearly satisfied." *Termnet Merchant Services, Inc. v. Phillips*, 277 Ga. 342 (588 SE2d 745) (2003).

This Court has long held that

all presumptions are in favor of the constitutionality of an act of the legislature and that before an [a]ct of the legislature can be declared unconstitutional, the conflict between it

---

[5] An appellate court in at least one other state, in construing a similar statute, has also upheld the application of statutory attorney fees even where, as here, the formula resulted in fees in excess of actual fees incurred. "[T]he purpose of [the statute] is to allow the debtor a last chance to pay his outstanding balance and avoid litigation, not to reward the prevailing party with the reimbursement of his costs in prosecuting or defending the action." *Trull v. Central Carolina Bank & Trust*, 124 N.C. App. 486, 491 (478 SE2d 39) (1996) aff'd in pertinent part, 347 N.C. 262 (490 SE2d 238) (1997) (applying and construing a similar North Carolina statute).

and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality.

*DeKalb County v. Purdue*, 286 Ga. 793, 794 (1) (692 SE2d 331) (2010) (citations and punctuation omitted). "State legislation is constitutional with respect to due process if it bears a rational relation to a proper and constitutionally permitted legislative purpose." *Georgia Dept. of Natural Resources v. Union Timber Corp.*, 258 Ga. 873, 876 (4) (375 SE2d 856) (1989). We find the statute in this case bears a rational relation to the purpose for which the statute was intended, namely to provide debtors with the opportunity to avoid the contractual obligation to pay the creditor's attorney fees by allowing the debtor a last chance to pay the balance of the debt and avoid litigation. Further, we conclude the application of OCGA § 13-1-11 to arrive at the amount of the award of attorney fees in this case is neither punitive nor violative of Borrowers' due process rights, nor is the award contrary to the intent of the statute.

*Judgment affirmed. All the Justices concur, except Nahmias, J., who concurs in judgment only as to Division 2.*

DECIDED MAY 20, 2013.

*Albert A. Chapar, Jr., Rebecca E. Strickland*, for appellant.
*Miller & Martin, Paul M. Alexander, William A. DuPre IV, Michael A. Coots, Jr.*, for appellee.