**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 3, 2013**

# In the Court of Appeals of Georgia

A13A0436. AETNA WORKERS' COMP ACCESS, LLC v. COLISEUM MEDICAL CENTER et al.

A13A0437. BUILDERS INSURANCE v. COLISEUM MEDICAL CENTER et al.

A13A0972. LIBERTY MUTUAL INSURANCE COMPANY v. COLISEUM MEDICAL CENTER et al.

A13A0973. TRAVELERS INDEMNITY COMPANY v. COLISEUM MEDICAL CENTER et al.

MCMILLIAN, Judge.

These four related appeals involve the administration and payment of workers' compensation claims and the duties and potential liabilities of the network administrator and insurers within that network. Appellant Aetna Workers' Comp Access, LLC ("Aetna") is the network administrator of the Aetna Workers

Compensation Access network and has entered into contracts with Appellees Coliseum Medical Center and six other Georgia hospitals (the "Providers"),[1] which provide medical care for employees injured on the job. Appellant Builders Insurance ("Builders"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Travelers Indemnity Company ("Travelers") are workers' compensation insurers (collectively the "Payors") who are responsible for compensating the Providers for services rendered to covered workers. Appellants Sedgwick Claims Management Services, Inc. ("Sedgwick") and MediCor Managed Care, LLC ("MediCor") act as claims administrators on behalf of the Payors (collectively the "Claims Administrators").

These appeals raise three issues: (1) whether the State Board of Workers' Compensation has jurisdiction over this dispute as opposed to the superior court; (2) whether an exculpatory clause in the contract between Aetna and the Providers precludes the Providers' claims against Aetna; and (3) whether the trial court properly denied Sedgwick, MediCor, Builders, and Liberty Mutual's motions to dismiss on the

[1] The Providers bringing this action are: Coliseum Medical Center, LLC d/b/a Coliseum Medical Centers; Eastside Medical Center, LLC d/b/a Emory Eastside Medical Center; Cartersville Medical Center, LLC d/b/a Cartersville Medical Center; Redmond Park Hospital, LLC d/b/a Redmond Regional Medical Center; Palmyra Park Hospital, Inc. d/b/a Palmyra Medical Centers; Fairview Park, Limited Partnership d/b/a Fairview Park Hospital; and Doctors Hospital of Augusta, LLC d/b/a Doctors Hospital (Augusta).

grounds that they were not a party to the contract between Aetna and the Providers.[2]

For the reasons set forth below, we affirm.

As alleged in the Complaint, Aetna has established a network of hospitals and insurers known as the Aetna Workers' Compensation Access ("AWCA") network. Aetna, as a network administrator,[3] contracted with the Providers, who agreed to offer medical services at certain rates, sometimes at a discount, to injured employees claiming workers' compensation benefits. In exchange, Aetna agreed to designate the Providers as preferred providers within the AWCA, administer the plans for Payors, and process and determine the amounts due to the Providers for medical services rendered to workers covered by workers' compensation insurance issued by the Payors.

---

[2] Travelers has not asserted this enumeration of error on appeal.

[3] Although Aetna claims that it is a certified Workers' Compensation Managed Care Organization, the Providers contend that through discovery, they have learned that Aetna was not certified as a Workers' Compensation Managed Care Organization.

The Letter of Agreement ("LOA")[4] entered into by Aetna and the Providers, effective February 1, 2006,[5] set out that "general" services were to be provided "at a rate of 98% of the current workers' compensation fees established by the State of Georgia." The Providers further agreed that "special" services, including prosthetics, implants, and high cost drugs greater than $500, would be provided at a rate of 80% of their billed charges.[6] Although Aetna was responsible for facilitating the Providers' claims for payment from the Payors and/or Claim Administrators, the parties agreed that Aetna was not responsible for payment to the Providers. Moreover, the LOA specified that neither Aetna nor the Payors would "deny or reduce payments" from the negotiated rate to a Provider for services unless one of the exceptions applied.[7]

---

[4] The LOA defined the hospitals as "Providers," patients entitled to workers' compensation insurance benefits as "Claimants," insurers and third party administrators as "Payors," and health care services that a claimant is entitled to receive under terms of workers' compensation coverage as "Compensable Services."

[5] The LOA was extended several times by mutual agreement of the parties until Aetna terminated the agreement in 2010.

[6] The Providers contend that Aetna, by not being certified as a Workers' Compensation Managed Care Organization, avoided Board review of the rates set out in the LOA.

[7] The exceptions include: "a. Member is not eligible; b. Benefit is not medically necessary, as agreed by [Aetna]/Payor and Provider, or related to the workers' compensation injury; and/or c. Adjustments for inappropriate billing or coding . . . as

4

The LOA further provided that any Payors, to which Aetna gave access to the Providers' agreement via the network, also agreed to all terms and conditions within the LOA, and Aetna agreed to notify the Payors that they were bound to the terms of the LOA.

Since the parties entered into the LOA, the Providers have provided compensable medical services to hundreds of workers' compensation claimants as a part of this network. The parties do not dispute that for "general" services, the Payors compensated the Providers at the discounted rate specified in the LOA. However, the Providers' claims for reimbursement of "special" services – prosthetics, high cost drugs and implants – were allegedly processed and paid at rates lower than those agreed upon in the LOA.[8] Asserting a breach of contract claim against Aetna, the Providers allege that Aetna orchestrated this system of underpayment by failing to process the Providers' claims at the agreed rates and by instructing the Payors to reimburse the Providers at the lower rates, resulting in a shortfall of over $2.8 million.

---

agreed by [Aetna]/ Payor and Provider. Provider will have the opportunity to correct errors in billing or coding, once errors are identified by [Aetna], Payor, or designee."

[8] Aetna does not appear to dispute that the Providers were reimbursed at a rate lower than 80% of billed rates, instead claiming that the Providers were at fault for billing at excessive rates.

The Providers have asserted a separate breach of contract claim against the Payors under a third party beneficiary theory.

In Case No. A13A0436, Aetna filed a motion to dismiss the Providers' complaint asserting that the State Board of Workers' Compensation (the "Board"), rather than the superior court, has exclusive jurisdiction over the Providers' claims. Aetna also filed a motion for summary judgment based on an exculpatory clause in the LOA, asserting that the clause precludes the Providers from bringing a breach of contract claim against it. In Case Nos. A13A0437, A13A0972, and A13A0973, the Payors and Claim Administrators also filed motions to dismiss, arguing that the Board has exclusive jurisdiction over the Providers' claims. Alternatively, some of the Payors and Claims Administrators have asserted they were not parties to the contract between Aetna and the Providers and therefore the breach of contract allegations fail to state a claim as a matter of law. The trial court denied all the motions, and the parties filed their respective appeals to this Court.

*Case No. A13A0436*

1. We first consider whether the Board, rather than the superior court, has exclusive jurisdiction over the Providers' claims against Aetna. Aetna argues that because the gravamen of the Providers' claims is a dispute over medical fees and the

6

Board has exclusive jurisdiction over medical fee disputes, the Complaint must be dismissed for lack of subject matter jurisdiction. The Providers counter that the Board lacks authority to resolve common law breach of contract claims and that the Board's jurisdiction is limited to resolving disputes between employees, employers, and appropriate "Parties at Interest,"[9] which they claim Aetna is not.

It is well settled that we review the trial court's ruling on motions to dismiss under the de novo standard of review. See *DeFloria v. Walker*, 317 Ga. App. 578, 579 (732 SE2d 121) (2012); *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 593 (688 SE2d 378) (2009).

We start by examining the nature, jurisdiction, and authority of the Board. The Board is a "creature of statute" with only the jurisdiction, power, and authority

---

[9] With respect to "Parties at Interest," OCGA § 34-9-206 (a) provides:

Any party to a claim under this chapter, a group insurance company, or other health care provider who covers the costs of medical treatment for a person who subsequently files a claim under this chapter may give notice in writing to the board at any time during the pendency of the claim that such provider is or should be a *party at interest* as a result of payments made in the employee's behalf for medical treatment.

(Emphasis supplied.)

7

conferred upon it by the General Assembly. See OCGA 34-9-40 ("The board shall have full authority, power, and the duty to promulgate policies, rules, and regulations for the administration of this chapter"); *Mulligan v. Selective HR Solutions, Inc.*, 289 Ga. 753, 756 (1) (716 SE2d 150) (2011). The Board performs all the powers and duties relating to the enforcement of the Workers' Compensation Act (the "Act"),[10] and the Act

> shall be liberally construed only for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both. This chapter is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to this chapter concerning accidents and injuries arising out of and in the course of employment as defined in this chapter. The provisions of this chapter shall be construed and applied impartially to both employers and employees.

OCGA § 34-9-23.

Although the Providers' claim against Aetna is clearly not one between an employer and employee under the Act, that does not end the inquiry of whether the

---

[10] OCGA § 34-9-58 provides: "The State Board of Workers' Compensation shall exercise all powers and perform all duties relating to the enforcement of this chapter."

Board has jurisdiction. This Court has recognized that the Board also has jurisdiction to resolve ancillary issues relating to the employee's compensation rights under the Act, explaining that

> [t]he general rule appears to be that, when it is ancillary to the determination of the employee's right, the Board has authority to pass upon a question relating to the insurance policy . . . . On the other hand, when the rights of the employee in a pending claim are not at stake, many Boards disavow jurisdiction and send the parties to the courts for relief. This may occur when the question is purely one between two insurers, one of whom alleges that it has been made to pay an undue share of an award to a claimant, and the award itself is not being under attack.

(Citations and punctuation omitted.) *Builders Ins. Group, Inc. v. Ker-Wil Enterprises, Inc.,* 274 Ga. App. 522, 523 (2) (618 SE2d 160) (2005). Compare *Lumber Transport, Inc. v. Intl. Indem. Co.*, 203 Ga. App. 588, 589 (1) (417 SE2d 365) (1992) (holding that Board did not have jurisdiction to determine coverage dispute between employer and insurer when employee had already filed and exhausted workers' compensation claim in another state).

9

The issue then is whether the Providers' breach of contract claim against Aetna bears an ancillary relationship to the determination of the employees' rights under the Act, thereby falling within the Board's exclusive jurisdiction. We find that it does not.

As alleged, the Providers claim that Aetna, as the network administrator, agreed but failed to: (1) "process the Hospitals' claims according to the rate of reimbursement set out in the Agreement Fee Schedule"; (2) instruct the Payors to reimburse the Providers using the contractually agreed upon rates; (3) inform Payors of the proper rate of reimbursement; and (4) "to properly manage the workers' compensation preferred provider plan according to its negotiated terms."[11] The Providers further allege that Aetna breached the duty of good faith and fair dealing by failing to rectify the underpayments. No specific employee claimant or claim is referenced, and neither Aetna nor the Payors point to any employee whose claim of benefits would be affected by resolution of the Providers' claim against them. Accordingly, we do not find these allegations implicate the benefits to be paid to any

[11] Among other duties under the LOA, Aetna agreed not to "deny or reduce any payments to be different from the negotiated rate to Provider for any workers' compensation Compensable Services provided by Provider to Claimant(s)" and that "Any Payors to which [Aetna] provides access to this Agreement, must also agree to all terms and conditions within this Agreement."

10

individual injured employee, but instead allege a systemic failure within the network administered by Aetna.

For that reason, Aetna's reliance on cases in which the employees' rights were clearly impacted are unavailing. Aetna relies on *Smart Professional Photocopy Corp. v. Dixon*, 216 Ga. App. 825 (456 SE2d 233) (1995), in which an injured employee filed a complaint against a photocopy company for charging more for copies of medical records than allowed under OCGA § 34-9-205. This Court held that the photocopy company was a "service provider" within the Worker's Compensation Act and was governed by the schedule of fees adopted by the Board. Thus, the injured employee's rights were clearly affected in *Smart Professional* because they were asserting the claim that the copy company overcharged them for a copy of their medical records. See also *Aetna Cas. & Sur. Co. v. Davis*, 253 Ga. 376, 377 (320 SE2d 368) (1984) (Board retains jurisdiction over dispute involving terms of settlement agreement between employee and workers' compensation insurer, which had been approved by the Board); *Mullis v. NC-CNH, Inc.*, 218 Ga. App. 332 (461 SE2d 237) (1995) (Board has exclusive jurisdiction to resolve claims by injured employees against medical providers who sent bills directly to them in violation of OCGA § 34-9-205).

11

We likewise find *Builders,* 274 Ga. App. at 522, to be distinguishable. In *Builders,* the injured employee had filed a claim against his employer and its workers' compensation insurer for payment of benefits. The workers' compensation insurer denied benefits, claiming that the policy had been cancelled and subsequently filed a declaratory judgment action on the coverage issue. Although the injured employee was not a party to the declaratory judgment action, his rights would clearly be affected by the resolution of the coverage question, and therefore we held that the Board had exclusive jurisdiction of the case even though it involved the interpretation of the insurance contract.

Aetna also posits that because the Providers' measure of damages equates to an underpayment under the LOA, this case is a disguised medical fee dispute over which the Board has exclusive jurisdiction. Pretermitting the question of whether the Board has exclusive jurisdiction over "medical fee disputes,"[12] it is well settled that

---

[12] We do note, however, that in asserting that the Board has exclusive jurisdiction over medical fee disputes, Aetna quotes *Davis*, 253 Ga. at 377, for the general proposition that "[t]he duty of approving items of medical expense is placed squarely on the Board." But we find that Aetna's reliance to be misplaced. *Davis* involved a claim by an employee that medical expenses were incurred as a result of a job related injury and that under the terms of a settlement agreement approved by the Board, she was entitled to payment. In holding that the employee's claim should be submitted to the Board, the Supreme Court reasoned that the Board has the duty of approving medical expenses. *Davis* does not stand for the broad proposition

12

The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed.

*Austin v. Bank of America, N.A.*, __ Ga. ___ (S13A0070, decided May 20, 2013). Although that amount could equate to 80 percent of what the Providers billed for special services, at this juncture, it is unclear what amount would place the Providers in the same position they would be in if the contract had been performed. And the possibility that the measure of damages for this breach of contract action could equate to what the Providers seek for special services is insufficient to make this case a disguised "medical fee dispute" when, as pleaded, the Providers have alleged breaches of contractual duties separate and distinct from the obligation to compensate for services rendered to injured employees.

We find, therefore, that the Providers' claim against Aetna is based on Aetna's role as network administrator, and that Aetna has not shown that, as alleged, the

---

asserted by Aetna that a contract dispute between a network administrator and providers, which may involve medical fees, should go before the Board.

outcome of this case would have any effect on a claim that an individual injured employee may assert or has asserted before the Board. Accordingly, the Providers' claim against Aetna does not fall within the ancillary jurisdiction of the Board. Because the Board "is not a court authorized to render judgment on [the] contract[]" in this case, we find no error in the trial court's denial of Aetna's motion to dismiss. (Punctuation omitted.) *Lumber Transport*, 203 Ga. App. at 589 (1). See also *Fireman's Fund Ins. Co. v. Crowder*, 123 Ga. App. 469, 471 (181 SE2d 530) (1971).

2. We next address Aetna's assertion that the trial court erred in denying its motion for summary judgment because the exculpatory clause of the LOA precludes the Providers from asserting any breach of contract claim against Aetna. We disagree.[13]

The construction of contracts is initially a question of law for the court. OCGA § 13-2-1. See also *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). If the trial court determines that the language is clear and unambiguous, "the court simply enforces the contract according to its clear terms; the

---

[13] We review a denial of summary judgment under a de novo standard of review and construe the evidence in the light most favorable to the nonmovants, the Providers. See *Thornton v. Georgia Farm &c. Co.*, 297 Ga. App. 132 (676 SE2d 814) (2009).

contract alone is looked to for its meaning." Id. With respect to exculpatory clauses, "absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in event of a breach by the other [party.]" *Imaging Systems Intl., Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 644 (490 SE2d 124) (1997). See *Stefan Jewelers v. Electro-Protective Corp.,* 161 Ga. App. 385, 387 (288 SE2d 667 (1982) (waiver of any recovery for breach of contract not unconscionable). Such provisions "severely restricting remedies act as exculpatory clauses and therefore should be explicit, prominent, clear and unambiguous." *Imaging Systems*, 227 Ga. App. at 644-645. See also *Holmes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474 (644 SE2d 311) (2007) (requiring exculpatory clauses to be explicit, clear, and unambiguous because they may amount to an accord and satisfaction of future claims).

We turn first to the language of the LOA. Aetna argues that the Providers clearly and unambiguously agreed in the LOA that they would not assert "any claim for compensation" against Aetna in the event of nonpayment by Payor for "Compensable Services" for "any reason" or for "breach of contract." Paragraph Two of the LOA provides:

15

Compensation for health care services that a Claimant is entitled to receive under the terms of Claimants workers' compensation coverage ("Compensable Services") rendered by Provider is defined on the attached Services and Compensation Schedule (hereinafter Exhibit B). . . . Providers acknowledge that [Aetna] does not act as a Payor and is not financially responsible for payment for Compensable Services. Providers agree to look to the applicable Payor for Compensable Services and will not assert any claim for compensation against Claimants or [Aetna] in the event of nonpayment by Payor for Compensable Services for any reason (including Payor's insolvency) or a breach of this Agreement, provided that Claimant provides sufficient information indicating the applicable Payor. [Aetna] agrees, upon request, from Provider, to facilitate with Payor, in determining the applicable group health carrier (if any) if Payor denies compensability with respect to a claim. . . .

Thus, the LOA states the Providers "will not assert any *claim for compensation*" from Aetna under two circumstances: (1) "nonpayment by Payor for Compensable Services for any reason" and (2) "breach of this Agreement." Although the term "claim for compensation" is not defined, the term "Compensable Services" is and refers to reimbursement for health care services rendered by the Provider and covered by the Claimant's workers' compensation insurance. Accordingly, we find that "claim for compensation" clearly references claims for payment for

16

"Compensable Services." And, contrary to Aetna's argument, this exculpatory clause does not purport on its face to exculpate Aetna from any and all claims, and its scope is limited to any "claim for compensation" in the event of nonpayment by the Payor or breach of the LOA. Here, the Providers allege nonpayment by the Payors as well as a breach of the LOA by Aetna, but as we held in Division 1, the Providers are not seeking reimbursement from Aetna for the underpayments by the Payors. Instead, the breach of contract claim is premised on Aetna's alleged failure to administer claims according to the terms of the LOA and to inform and require the Payors to reimburse at the agreed upon rates. We thus disagree with Aetna that the language in Paragraph Two "explicit[ly], prominent[ly], clear[ly] and unambiguous[ly]" bars the Providers from asserting any claim of breach of contract by Aetna. See *Imaging Systems*, 227 Ga. App. at 644-645; *Holmes,* 284 Ga. App. at 474.

Aetna points to *Constantine v. MCG Health, Inc.*, 275 Ga. App. 128 (619 SE2d 718) (2005), to urge us to find that the language in Paragraph Two bars the Providers' claims. But we find the exculpatory clause in *Constantine* to be materially different from the one in the LOA. In *Constantine*, that clause broadly and unambiguously prohibited MCG from "bill[ing], charg[ing], collect[ing] a deposit from, seek[ing] remuneration or reimbursement from, or hav[ing] any recourse against Member or

17

persons other than (Aetna) acting on their behalf for services listed in this Agreement." Id. at 129. In contrast, the exculpatory clause in the LOA was limited to any "claim for compensation" and did not broadly state that the Providers were prohibited from having "any recourse" against Aetna.

Based on the foregoing, we find no error in the trial court's denial of Aetna's motion for summary judgment.

*Case Nos. A13A0437, A13A0972, A13A0973*

3. Like Aetna, the Payors and Claims Administrators[14] assert that the trial court erred in denying their motion to dismiss for lack of subject matter jurisdiction, arguing that the Board has exclusive jurisdiction over the Providers' claims. For similar reasons as set out in Division 1, we affirm. However, in so doing, we recognize that the Payors are in a somewhat different position than Aetna because the Act seems to contemplate that disputes over fees billed by medical providers to insurers can be brought by the providers before the Board. See OCGA § 34-9-205;

---

[14] The Claims Administrators have adopted the arguments of the Payors, and the parties do not seem to dispute that the Claims Administrators are in the same posture as the Payors for the purpose of resolving this jurisdictional question.

18

State Board Rule 203(a); and State Board Rule 206.[15] Also, unlike network administrators such as Aetna, the Act includes Payors within the definition of employer, OCGA § 34-9-1 (3), and every workers' compensation insurance policy is deemed subject to the Act. OCGA § 34-9-125; see *Builders*, 274 Ga. App. at 523 (2).

But as explained in *Builders*, if the issue solely is "whether the policy at issue required reimbursement as between the insurer and the insured employer, it was a contract dispute for which the superior court had jurisdiction." (Citation omitted.) *Builders*, 274 Ga. App. at 524 (2). Similarly, we find that this is a contract dispute solely between the Providers and Payors. The Providers allege that Aetna and each Payor entered into contracts for health care services rendered to patients who are subscribers of each individual Payor's workers' compensation plan; that Aetna agreed under the LOA to ensure that these contracts required each Payor to comply with the rates in the LOA; that the Payors breached this term of their contracts by under-reimbursing the Providers; and that the Providers may recover as third party beneficiaries to the Aetna-Payor contracts. As with Aetna, we find that these

---

[15] Board Rule 203 provides that "Medical expenses shall be limited to the usual, customary and reasonable charges as found by the Board pursuant to OCGA § 34-9-205," and Board Rule 206 sets out procedures for providers to contest reduction in charges by insurers.

allegations raise a dispute between the Payors and the Providers, without implicating

the rights of the injured employees, and therefore, the Board does not have exclusive

jurisdiction of these claims.[16]

4. Finally, Builders, Liberty, Medicor, and Sedgwick assert that the Providers'

complaint has failed to state a claim because they were not parties to the LOA, and

the record does not reflect any contract between the Payors and Aetna to which the

Providers could be third party beneficiaries. The trial court held as follows:

> At the hearing, counsel for certain [Payors] indicated that a contract did
> not exist between [Payors] or Aetna or [Providers]. If it is shown at the
> dispositive motions stage that a contractual relationship does not exist,

---

[16] The Payors creatively argue that finding the Board does not have exclusive jurisdiction would infringe on a "property right" or procedural protection that the Payors have within the workers' compensation system when a claimant's treatment is paid for by a third party provider (such as the Providers) and the third party provider elects not to seek reimbursement from the workers' compensation insurer by not intervening in the injured worker's claim before the Board. See OCGA § 34-9-206; State Board Rule 206. This argument was not raised in the trial court, and therefore we will not address it for the first time on appeal. See *Silver Pigeon Properties, LLC v. Fickling & Co.,* 316 Ga. App. 167, 170 (728 SE2d 801) (2012); *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007). However, we note that we have found no authority, and the Payors have cited none, that the Payors have a "property right" under the Act to *require* the Providers to intervene in an injured employee's workers' compensation claim, rather than proceed in the superior court, in order to protect Payors' potential windfall.

then the Court may find no basis to continue jurisdiction over this matter. However, at the pleading stage, the Court finds that it is premature to undergo this analysis.

We agree.

The standard for dismissal for failure to state a claim under OCGA 9-11-12 (b) (6) is well settled. The minimum pleading requirements are found in OCGA 9-11-8 (a) (2) (A), which requires that the complaint contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," and we have held that the touchstone is fair notice – "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading." (Citations omitted.) *Benedict v. State Farm Bank, FSB,* 309 Ga. App. 133, 134 (1) (709 SE2d 314) (2011). See also *Speedway Motorsports v. Pinnacle Bank*, 315 Ga. App. 320, 320-321 (727 SE2d 151) (2012). ("If the complaint gives fair notice, 'it should be dismissed for failure to state a claim only if . . . its allegations disclose with certainty that no set of facts consistent with the allegations could be proved that would entitle the plaintiff to the relief he seeks.'") (citation omitted.). In other words, a dismissal will not be upheld unless

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts

21

asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Stendahl v. Cobb County*, 284 Ga. 525 (1) (688 SE2d 723) (2008).

Although the allegations regarding the existence and terms of the contracts are skeletal,[17] we cannot say that they fail to meet the bare minimum or fail to provide fair notice that the Providers are asserting claims against the Payors as third party beneficiaries of contracts between Aetna and the Payors. Accordingly, the Payors have failed to establish with certainty that the Providers would not be entitled to relief under any state of provable facts, nor have they shown that the Providers could not possibly produce evidence to warrant the relief sought. See *Archer Western Contractors Ltd. v. Estate of Mack Pitts*, 292 Ga. 219, 226 (2) (735 SE2d 772) (2012) (one who is an intended beneficiary of a contract may sue for its breach). Compare *Perry Golf Course Development, Inc. v. Housing Authority of the City of Atlanta*, 294 Ga. App. 387, 388 (1) (670 SE2d 171) (2008) (upholding judgment on the pleadings of third party beneficiary claim when contract attached to the complaint showed on

---

[17] We describe the allegations against the Payors in Division 3, supra.

its face that plaintiff was not an intended beneficiary);[18] *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 161 (5) (658 SE2d 909) (2008) (Although plaintiff alleged that she was a third party beneficiary, she could not survive summary judgment without producing the terms of the contract.).

5. Alternatively, the Payors contend that even if they are found to be parties to contracts to which the Providers are third party beneficiaries, those contracts would be unenforceable as against public policy because they would permit the Providers to charge more for services provided to the injured employees than the fees set by the Board under OCGA § 34-9-205. See OCGA §§ 13-8-1; 13-8-2.[19] We disagree.

OCGA § 34-9-205 provides:

(a) Fees of physicians, charges of hospitals, charges for prescription drugs, and charges for other items and services under this chapter shall be subject to the approval of the State Board of Workers' Compensation. No physician, hospital, or other provider of services shall be entitled to collect any fee unless reports required by the board have been made.

---

[18] The Providers did not attach the referenced contracts between the Payors and Aetna to the complaint.

[19] OCGA § 13-8-1 provides in pertinent part: "A contract to do an immoral or illegal thing is void." OCGA § 13-8-2 (a) provides that "[a] contract that is against the policy of the law cannot be enforced" and gives certain examples not relevant here.

(b) Annually, the board shall publish in print or electronically a list by geographical location of usual, customary, and reasonable charges for all medical services provided under subsection (a) of this Code section. The board may consult with medical specialists in preparing said list. Fees within this list shall be presumed reasonable. . . . The recommendations of the panel of appropriate peers shall be evidence of the reasonableness of fees and necessity of service which the board shall consider in its determinations.

Nothing in OCGA § 34-9-205 prohibits hospitals, workers' compensation insurers, and network administrators from entering into contracts and setting reimbursement rates. Although such rates are subject to Board approval, OCGA § 34-9-205 does not require that all such rates be pre-approved by the Board, and nothing in that provision sets maximum rates for services. To the contrary, the fee schedule is only to be "presumed reasonable." See *Chatham County Dept. of Family & Children Services v. Williams*, 221 Ga. App. 366, 367 (471 SE2d 316) (1996) (holding that the Act "authorizes the Board to issue a fee schedule of charges which will be 'presumed reasonable,' but it also gives the Board the discretion to approve other charges as reasonable. Thus, the fee schedule is a guideline rather than a 'rule' which must be followed."). Accordingly, we find that allowing the Providers' contract claim against the Payors to proceed does not violate any law or public policy, and affirm the trial

court's denial of the Payors' motion to dismiss for failure to state a claim upon which relief may be granted.

*Judgments affirmed. Andrews, P. J., and Dillard, J., concur.*