**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0670. SMITH et al. v. WILLIAMS et al.

RAY, Judge.

This case stems from the breakup of a law firm, Smith, Hall & Williams, LLP. Luanne Bryant Smith and Luanne Bryant Smith, P. C. (collectively "Smith") filed this direct appeal from three trial court orders entered in a suit between Smith and her onetime law partner, Jennifer E. Williams, and Jennifer E. Williams, LLC (collectively "Williams"). For the reasons that follow, we affirm in part and reverse in part.

The firm handled domestic, personal injury, and workers' compensation cases, among others. In November 2012, Williams alleges that, without notice, Smith packed up her things, took case files, and left the office. After Smith left,[1] Williams

---

[1] The parties do not agree on the issue of when the partnership actually ended.

sued, seeking dissolution of the partnership and alleging breach of contract. She also moved for an injunction. The portion of their dispute that is before this Court turns primarily on issues related to a division of the fees earned from certain workers' compensation cases where the clients elected to retain Smith as their counsel after Smith and Williams ceased practicing together. Williams seeks 50 percent of those fees.

1. Smith contends that the trial court erred in denying her motion to dismiss for lack of subject matter jurisdiction.[2] The gravamen of Smith's argument is that this case involves a dispute over attorney fees in workers' compensation cases and that the State Board of Workers' Compensation (the "Board") has exclusive jurisdiction over such disputes. The trial court did not err.

We review a trial court's ruling on a motion to dismiss de novo. *Aetna v. Workers' Comp Access, LLC v. Coliseum Medical Ctr,*, 322 Ga. App. 641, 644 (1) (746 SE2d 148) (2013). An examination of the nature, jurisdiction, and authority of the Board is instructive here.

---

[2] Smith has not answered Williams' complaint, but rather has entered a special appearance without submitting to the jurisdiction of the trial court.

2

The Board is a "creature of statute" with only the jurisdiction, power, and authority conferred upon it by the General Assembly. See OCGA § 34-9-40 ("The [B]oard shall have full authority, power, and the duty to promulgate policies, rules, and regulations for the administration of this chapter.") . . . The Board performs all the powers and duties relating to the enforcement of the Workers' Compensation Act (the "Act"), and the Act shall be liberally construed *only for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both*.

(Citations and footnote omitted; emphasis supplied.) Id. See also OCGA § 34-9-58.

The action between Smith and Williams is clearly not one between an employer and an employee within the Act's provisions. However, this Court has recognized that the Board also has jurisdiction to resolve ancillary issues relating to an employee's compensation rights under the Act. See *Builders Ins. Group, Inc. v. Ker-Wil Enterprises, Inc.*, 274 Ga. App. 522, 523-524 (2) (618 SE2d 160) (2005) (if a dispute is ancillary to an employee's right, the Board has authority to act; when the rights of an employee in a pending claim are not at stake, the Board may disavow jurisdiction when, for example, the dispute is over an insurer's duty to pay a particular share of an award but the award itself is not under attack).

3

The question here is whether Williams' claims against Smith are ancillary to the determination of the rights of the employee-claimants since attorney's fees are at issue, thus falling within the Board's exclusive jurisdiction. While it is true that specific claimants are referenced in these cases, neither party points to any claimant "whose claim of benefits would be affected by [the] resolution of [Williams'] claim against [Smith]. Accordingly, we do not find these allegations implicate the benefits to be paid to any individual injured employee, but instead allege a systemic failure within [the erstwhile law firm of Smith, Hall & Williams]." *Aetna*, supra at 645 (1).

It is true that OCGA § 34-9-108 (a) requires Board approval of attorney fees in excess of $100 and limits attorney fees to 25 percent of a claimant's award. However, the statute by its own terms clearly deals with the Board's protection of the rights of employee-claimants in relation to their attorneys rather than the rights of one attorney in relation to another attorney.

> The State Board of Work[er]'s Compensation has authority to examine and approve contracts between *claimants and their counsel* as to the amount of attorneys fees but it has no authority, statutory or otherwise, to set the fees of the attorneys, *nor to examine and approve contracts between attorneys as to the division of their fees* when associated to represent claimants.

(Citations omitted; emphasis supplied.) *Feldman v. Edwards*, 107 Ga. App. 397, 397 (1) (130 SE2d 350) (1963). The trial court did not err.

2. Smith argues that the trial court erred in denying her motion for partial summary judgment.

On appeal from the grant or denial of summary judgment, this Court applies a de novo standard of review. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We must view the evidence, and all reasonable inferences drawn from it, in the light most favorable to the nonmovant. *Woodcraft by MacDonald, Inc. v. Ga. Cas. and Sur. Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013).

Smith alleges that Williams was notified, in writing and by September 19, 2013, at the latest, that claimants in the contested cases had terminated Williams's services. She argues that because Williams failed to file attorney fee liens on these cases with the Board in accordance with State Board of Workers' Compensation Rule 108 (e) ("Board Rule"), she has waived any claim for fees in the contested cases.

It is undisputed that Williams did not file attorney fee liens with the Board in the disputed cases.[3] When an employee and his or her attorney terminate their contract as outlined below, Board Rule 108 (e) provides, in pertinent part, that

> [a]n attorney of record who chooses to file a lien for services and/or expenses must do so by filing written notice of the contended value of such services and/or expenses with the Board . . . within 20 days after (i) withdrawal from the case, or (ii) notice of termination of the contract in writing by the client. . . . Failure to perfect a lien in this manner will be considered a waiver of further attorneys' fees.

The trial court, however, denied Smith's motion for partial summary judgment, finding, in a narrowly tailored order, that "*several cases settled prior to the 'termination' letters* sent by [Smith] and that *said cases* are assets and . . . are for a determination at a final trial." (Emphasis supplied.)

Viewing the facts in the light most favorable to Williams as the nonmovant, the cases the trial court references were assets and as such may be subject to enforcement through the partnership agreement because there remains a material factual dispute as to when the partnership terminated. Smith argued that the partnership ended when

---

[3] Williams sent a letter and attorney fee lien to opposing counsel in one case, however.

she left the office November 24, 2012. Williams argued that the partnership was not terminated merely by Smith's leaving the office, and there is evidence that the parties split fees even after the date that Smith alleges the partnership ended. There also is evidence that as of June 16, 2014, the partnership affairs had not been wound up. See OCGA § 14-8-30 ("On dissolution the partnership is not terminated, but continues until the winding up of the partnership affairs is completed"). As a result, and as determined by the trial court, in an action such as this that seeks to end a partnership, the determination of the value of assets and liabilities is properly reserved until the main determination of the case. *Rogers v. McDonald*, 224 Ga. 599, 601 (1) (163 SE2d 719) (1968). See generally *Jordan v. Moses*, 291 Ga. 39, 41 (727 SE2d 460) (2012) ("A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his co-partner for his share of the prospective business opportunity") (citation omitted).

Contrary to Smith's argument, the trial court's order by its own terms does not cover cases in which the contingency justifying the fee had yet to be earned, as the cases covered by the order were previously "settled," so Smith's reliance on *The*

7

*Eichholz Law Firm, P.C. v. Tate Law Group, LLC*, 310 Ga. App. 848, 850-853 (1) (714 SE2d 413) (2011) is misplaced. The trial court did not err.

3. Smith argues that the trial court erred in granting Williams' motion to have Smith place additional attorney fees in trust because doing so modified a prior consent order for an interlocutory injunction that required each party to place 50 percent of attorney fees from contested cases in escrow.

> The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. The discretion of the trial judge is a discretion based on the law and the evidence before him. A petition to modify an interlocutory injunction cannot be granted in the absence of a meritorious showing that such modification should be made.

(Citations and punctuation omitted.) *Kelley v. Kelley*, 228 Ga. 639, 640 (187 SE2d 284) (1972). OCGA § 9-5-8 (granting and continuing injunctions rests in the sound discretion of the trial court and should not be used other than in clear and urgent cases).

The initial injunction required that 50 percent of attorney fees from specific listed cases be deposited in trust accounts and not disbursed except by written agreement of the parties and their lawyers, or by court order. Williams sought a

8

modification to add in fees from two other cases, the Dishman case and the Keller case, which had settled and from which fees had been disbursed to Smith's operating account prior to the initial injunction.

In the modification order appealed from, the trial court determined that Smith was "about to settle a large case" and should place "those funds in trust" to apply to "one-half of the fees," specifically on the Dishman and Keller cases, within 10 days of the entry of the order. Smith filed a motion for clarification, and the trial court entered a new order identifying the "large case" as the "Jose Hernandez" case, and requiring Smith to place $43,750 from that case in trust within 10 days of the time Smith received the funds. The trial court specified that the $43,750 was the amount that Williams claimed she was entitled to from the settlement of the earlier Dishman and Keller cases. As Smith points out, Williams' claim to half the fees in the Hernandez case already is protected by the original injunction. The clarification order would essentially have Smith deposit additional money from the Hernandez case, once it settles, in order to protect Williams as to the unrelated Dishman and Keller cases.[4]

---

[4] The trial court's order is, to a degree, philosophically analogous to a prejudgment attachment (OCGA §§ 18-3-1, 18-3-9, 18-3-10); however, such prejudgment actions must meet certain requirements and offer certain safeguards not

9

However, an exhibit attached to the motion for clarification is an e-mail from counsel for Hernandez's employer stating that the employer "has elected not to settle the claim at this juncture."

Based on the information before us, there is no way to know whether – or for what amount – the Hernandez case will settle. In the event that it does settle and, hypothetically, results in $50,000 in attorney fees rather than the larger amount the trial court apparently anticipates, Smith would be required to place half of that $50,000, or $25,000, in trust under the terms of the original injunction, and then to satisfy the clarification order, would have to place an additional $43,750 – more than the amount collected from the Hernandez case – in trust as well.

> A trial court may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction. That is because an interlocutory injunction is a device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication. There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy.

present here.

(Citation omitted). *American Mgmt. Svcs. East, Inc. v. Fort Benning Family Communities, LLC*, 318 Ga. App. 827, 832-833 (3) (734 SE2d 833) (2012). Here, the modification does not "maintain the status quo," and may put Smith at risk of injury. Further, there has been no showing that Williams would be left without an adequate remedy absent this modification. Id. Finding error, we therefore reverse the trial court's clarification order modifying the injunction.

*Judgment affirmed in part; reversed in part. Barnes, P. J., and McMillian, J., concur.*