## A09A1817. MCG HEALTH, INC. v. OWNERS INSURANCE COMPANY.

(692 SE2d 72)

DOYLE, Judge.

This case arises from the dismissal of a complaint filed by MCG Health, Inc. ("MCG"), against Owners Insurance Company ("Owners"), against which MCG had filed a hospital lien for services provided to Braxton Morgan at the Medical College of Georgia after he was injured in an automobile accident caused by an individual insured by Owners. The trial court granted third-party defendant Morgan's cross-motion for summary judgment, dismissing MCG's complaint. For the reasons that follow, we affirm.

At the time he received treatment at the Medical College of Georgia, Morgan was an active duty member of the United States Army covered by the United States Department of Defense TRICARE health insurance program. MCG had a contract to provide certain services to beneficiaries of the TRICARE program, and the contract provided limitations on MCG's recovery of payment for medical services provided to TRICARE beneficiaries. The total cost of the services provided to Morgan at the Medical College of Georgia was $18,259.61. After Morgan was discharged from the hospital, MCG filed a hospital lien for the full cost of services provided to Morgan pursuant to OCGA § 44-14-470 et seq., against all causes of action against unknown persons liable for Morgan's injuries; MCG did not bill TRICARE at any time before or after filing the hospital lien. After MCG filed the hospital lien, Morgan entered into a release and settlement agreement with Owners for $50,000; however, Owners and its insured did not admit liability for the accident as part of the settlement. In exchange for the sum, Morgan agreed to release all his claims against Owners, to indemnify Owners and its insured, and to settle all valid liens incurred based on the accident from the settlement proceeds, $18,259.61 of which was placed into an escrow account in the event that the hospital lien was determined to be valid.

MCG instituted the action below against Owners in order to collect on its hospital lien. Owners then filed a third-party complaint against Morgan, who then filed an answer, cross-claims against MCG, and a motion to dismiss MCG's complaint for failure to state a claim, arguing that the hospital lien was invalid. MCG also filed a motion for summary judgment.

The trial court granted Morgan's motion to dismiss MCG's complaint for failure to state a claim, but treated the motion as a cross-motion for summary judgment. In its order, the trial court found that the contract between MCG and TRICARE precluded MCG from recovering the cost of Morgan's services from Owners (1) because the section of the contract relied upon by MCG to establish its right to file

the hospital lien conflicted with other parts of the contract and with federal statutes and regulations governing TRICARE, which were made part of the contract; (2) because the contract required MCG to submit a bill to TRICARE for reimbursement prior to taking other steps for reimbursement; and (3) because balance billing a TRICARE beneficiary, which the court determined would effectively occur if MCG was able to collect under its hospital lien, was prohibited by the contract and by federal statute.

1. As an initial matter, Morgan has filed a motion to dismiss MCG's appeal, arguing that the order is not immediately appealable because it dismissed MCG's claim, but Morgan's cross-claims remain pending below. While it is true that Morgan's cross-claims remain pending, the trial court treated Morgan's motion to dismiss as a cross-motion for summary judgment, and an order granting partial summary judgment is immediately appealable even if the trial court has not certified the order for immediate review.[1] Accordingly, Morgan's motion to dismiss is without merit, and we have jurisdiction to review the appeal.

2. Generally, a hospital has the right to file a lien for reasonable charges against any cause of action accruing to an injured person to whom the hospital provided care.[2] OCGA § 44-14-470 (b) makes clear that the lien is not against the treated individual and only attaches to the individual's available causes of action. Moreover, "[n]o release of the cause or causes of action or of any judgment thereon or any covenant not to bring an action thereon shall be valid or effectual against the lien . . . unless the holder thereof shall join therein or execute a release of the lien."[3] Nevertheless, a contract between the treated individual's health insurer and the health care provider may preclude a hospital from seeking recovery through the statutory lien process.[4]

---

[1] See OCGA § 9-11-56 (h); *City of Demorest v. Town of Mount Airy*, 282 Ga. 653, 653-654, n. 1 (653 SE2d 43) (2007) (holding that direct appeal was proper because even though the motions upon which the trial court ruled were motions to dismiss, the disposal of which are not normally immediately appealable, "the motions to dismiss asserted, among other things, that the complaint failed to state a claim and the trial court considered material beyond the pleadings in ruling on the motions to dismiss, those motions were required to be treated as motions for summary judgment (OCGA § 9-11-12 (b)), and the losing party has the right to a direct appeal from an order granting partial summary judgment").

[2] See OCGA § 44-14-470 (b).

[3] OCGA § 44-14-473 (a). For instance, the settlement between Owners and Morgan does not destroy MCG's right to file and foreclose on a hospital lien against Owners. See *Dawson v. Hosp. Auth. of Augusta*, 98 Ga. App. 792, 793-794 (1) (106 SE2d 807) (1958).

[4] See *Constantine v. MCG Health*, 275 Ga. App. 128, 129-131 (1) (619 SE2d 718) (2005) (hospital lien could not be maintained because balance billing was prohibited by contract between the individual's insurer and the health care provider, and the health care provider had already accepted contractual payment from individual's insurer).

3. MCG argues that the trial court erred in granting summary judgment to Morgan because specific provisions of the TRICARE manual allow MCG to forgo payment from TRICARE and instead seek full payment from Owners via Georgia's hospital lien statute.

This Court reviews de novo the trial court's grant of partial summary judgment.[5] "The construction of a contract is a question of law for the courts, . . . as is the existence or nonexistence of an ambiguity in a contract. . . ."[6] If the terms of a contract are clear, the court looks only to the contract to find the parties' intent.[7] "If the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity."[8]

Viewing the evidence in the light most favorable to MCG,[9] the record shows that Section 17 of the contract between MCG and TRICARE, labeled "No Liability to Beneficiaries for Charges," states:

> [MCG] hereby agrees that in no event, including, but not limited to nonpayment by [Humana Military Health-care Services, Inc. ("HMHS")] or the Government, HMHS insolvency or breach of this Agreement, shall [MCG] bill, charge, collect a deposit from, seek compensation, remuneration, or reimbursement from, or have any recourse against Beneficiaries, or persons other than HMHS acting on their behalf, for Covered Services provided pursuant to this Agreement.[10] This provision shall not prohibit collection of fees for any non-covered service and/or Copayments in accordance with the terms of the Beneficiary's coverage and this Agreement.
>
> *Nothing in this Agreement shall be construed to limit [MCG]'s rights under OCGA § 44-14-470 et seq. [MCG] shall have the right to seek to recover its charges, to the extent that said charges exceed what Health Plan or Payor pays [MCG] pursuant to this Agreement, incurred as a result of Hospital's providing Hospital Services to Members and which charges are the liability of a third party. The parties further agree that payment by Health Plan or Payor to [MCG] does*

---

[5] See id. at 129 (1).

[6] (Citations omitted.) *Avion Systems v. Thompson*, 293 Ga. App. 60, 62-63 (2) (a) (666 SE2d 464) (2008).

[7] See id. at 63 (2) (a).

[8] (Punctuation omitted.) Id.

[9] See *Constantine*, 275 Ga. App. at 129 (1).

[10] See also 10 USC § 1079 (j) (3); 32 CFR § 199.16 (d) (5) (stating that participating hospitals may not bill TRICARE beneficiaries for balances in excess of TRICARE payments).

> *not extinguish [MCG]'s lien or in any way limit [MCG]'s*
> *rights under OCGA § 44-14-470, et seq., except that the*
> *amount of the [MCG]'s lien shall not include the amount of*
> *any payment(s) by Health Plan or Payor to [MCG] on behalf*
> *of a Member.*
>
> [MCG] further agrees that (I) this provision shall survive termination of this Agreement regardless of the cause giving rise to termination and *shall be construed to be for the benefit of the Beneficiary,* (II) this provision supersedes any oral or written contrary Agreement now existing or hereafter entered into between [MCG] and Beneficiary or persons acting on their behalf, and (III) this provision shall apply to all employees and subcontractors of [MCG].[11]

The contract also specifically made part of the agreement "[t]he Provider Handbook and the statutes, regulations[,] and manuals applicable to the TRICARE program. . . ."

Chapter 11, Section 5, paragraph 5.5.2 of the TRICARE manual states:

> It is important to note that prior to submission of a TRICARE claim, the hospital is not precluded from seeking recovery of its billed charge[12] directly from the liable third party or insurer, including auto or home owners insurance, no-fault auto or uninsured motorist coverage. However, the hospital may not bill the beneficiary without filing a TRICARE claim. Once a TRICARE claim is filed, the hospital may not seek recovery of any amount, other than the applicable beneficiary deductible and cost-share, from the beneficiary, the third party, or the liability insurer because of the limitations imposed by the TRICARE participation requirements.[13]

The trial court determined that this section, while it appeared to support MCG's position, actually addressed collection from a beneficiary's other insurers (rather than a liable third party's insurers) because 10 USC § 1095 defines third party payor as a contractually obligated payor, not as a tortfeasor. Moreover, the trial court deter-

---

[11] (Emphasis supplied.)

[12] Billed charge refers to the full amount of the services and not merely the allowable amount under the TRICARE agreement.

[13] We note that the portion of the manual allowing MCG "recovery of its billed charge directly from the liable third party or insurer" conflicts with Section 17 of the Hospital Services Agreement that limits the amount of any lien filed by MCG to the difference between what MCG billed and what it would receive from TRICARE.

mined that the second sentence of Section 5.5.2 precluded MCG from recovering any sum until it first billed TRICARE, and that by billing TRICARE, MCG would be precluded from attempting to recover under the hospital lien statute.

The trial court's conclusion, however, is incorrect based on the manual's earlier definition of "Third Party Liability (TPL) Recovery." Section 5, paragraph 2.1 of the manual explains that a "third party will be an individual (or an entity) liable for tort damages to the injured TRICARE beneficiary. Recovery may be obtained from the third party and/or from a liability insurance carrier covering the third party." Thus, it is clear that within the context of the manual, including paragraph 5.5.2, the use of the term "liable third party" includes a tortfeasor's liability insurer and is not limited to entities with contractual relationships with the beneficiary. Moreover, 10 USC § 1095 limits its definition of "third-party pay[o]r" to that section of the U. S. Code.[14]

Although we agree with MCG's reading of Section 5, Paragraph 5.5.2, and conclude that the contract allowed MCG to file a lien under OCGA § 44-14-470 (b) prior to submitting a claim to TRICARE, we affirm the trial court's grant of summary judgment to Morgan because the lien in this case is invalid as it is not supported by any debt.

Whether or not OCGA § 44-14-470 (b) requires the existence of an underlying debt to support the lien has not been previously decided[15] and is a question of statutory interpretation.

> The Supreme Court of Georgia summarized the guidelines for statutory interpretation as follows: In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of the sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute,

---

[14] See 10 USC § 1095 (h) (1). Reading further into this code section, collection from a third-party tortfeasor is governed by 42 USC § 2651 et seq. See 10 USC § 1095 (i) (2).

[15] Other states, however, have decided the issue consistent with this opinion. *Parnell v. Adventist Health System/West*, 35 Cal.4th 595, 607 (II) (109 P3d 69) (2005) ("[A] lien under the [Hospital Lien Act] is based on a debt owed by the patient to the hospital."); *Dorr v. Sacred Heart Hosp.*, 228 Wis.2d 425, 444 (I) (597 NW2d 462) (1999) ("[W]e conclude that because the Provider Agreement negates the existence of a debt owed by the Dorrs to the hospital and because the filing of the lien violates the hospital's agreement to not seek recourse against Group Health's subscribers, the hospital is precluded under the contract from asserting its lien rights.").

YALE LAW LIBRARY

however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1-3-1 (a).[16]

Lien laws must be strictly construed.[17]

As set forth above, OCGA § 44-14-470 (b) gives a hospital, such as MCG, a *lien* for the reasonable *charges* for hospital care and treatment of an injured person on *any and all causes of action accruing to the person* on account of injuries giving rise to the cause of action and which necessitated the hospital care. The statute also specifically states that the lien is only against the cause of action and shall not be a lien against the injured person or any other property of the injured person and is not evidence of the person's failure to pay a debt.[18] The statute does not state whether or not it requires the existence of a debt to support enforcement. However, the statute expressly creates a "lien." Lien is defined as "[a] legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied."[19]

> The term "lien," in a narrow and more technical sense, signifies the right by which a person in possession of personal property holds and detains it against the owner in satisfaction of a demand; but it has a more extensive meaning, and in common acceptation is understood and used to denote a legal claim or charge on property, either real or personal, for the payment of any debt or duty. . . . A lien is defined to be a hold or claim which one has upon the property of another as security for some debt or charge.[20]

"Unless they are words of art, words are given their ordinary

---

[16] (Punctuation and emphasis omitted.) *Rite-Aid Corp. v. Davis*, 280 Ga. App. 522, 524 (634 SE2d 480) (2006). See also *Ins. Dept. of the State of Ga. v. St. Paul Fire & Cas. Ins. Co.*, 253 Ga. App. 551, 552 (559 SE2d 754) (2002) ("The cardinal rule of statutory interpretation is to ascertain the legislature's purpose in enacting a statute and then construe the statute to effect that purpose, avoiding interpretations that do not 'square with common sense and sound reasoning.' ") (footnote omitted).

[17] See *Ramsey v. Sumner*, 211 Ga. App. 202, 204 (438 SE2d 676) (1993).

[18] See OCGA § 44-14-470 (b).

[19] Black's Law Dictionary 1006 (9th ed. 2009). See *Waldroup v. State*, 198 Ga. 144, 148-149 (30 SE2d 896) (1944) ("Bouvier's Law Dictionary defines 'lien' as 'a hold or claim which one person has on the property of another as a security for some debt or charge.' ").

[20] (Punctuation omitted.) *Nat. Surety Co. of New York v. Medlock*, 2 Ga. App. 665, 672 (3) (58 SE 1131) (1907).

signification.''[21] So while the statute does not specifically require a debt, nowhere in the statute does the legislature express a desire that a lien could be filed on a person's property when that person owes no obligation to the lien claimant.[22] Thus, the legislature intended to give a lien under OCGA § 44-14-470 (b) the same characteristics as a typical lien, the ordinary definition of which requires a debt to support it.

Moreover, we conclude that the language of the statute contemplates that the underlying debt to which the lien attaches is an obligation owed by the person receiving medical services from the hospital. The statute does not give the hospital an independent cause of action against the third party tortfeasor.[23] Instead, it authorizes the hospital to attach a lien ''for the reasonable charges for hospital . . . care and treatment of an injured person'' and states that the ''lien shall be upon any and all causes of action accruing to the person to whom the care was furnished . . . on account of injuries giving rise to the causes of action and which necessitated the hospital . . . care.''[24] The lien seeks to compensate the hospital for services provided to the patient; thus, the use of the term ''charges'' presumably refers to the charges incurred and made to the patient or his health insurer.[25] Additionally, the lien statutes require the hospital to give notice to the patient,[26] and if the tortfeasor fails to satisfy the lien before paying the patient, a hospital may recover directly from the patient.[27] Based on the clear language of the statute and the focus on the patient, we conclude that the debt owed by the patient to the hospital is the foundation of the hospital's lien right.[28]

Having concluded that OCGA § 44-14-470 (b) contemplates the existence of a debt owed by the patient to the hospital, we must next

---

[21] *Adams v. State Farm &c. Ins. Co.*, 298 Ga. App. 249, 251 (2) (679 SE2d 726) (2009). See OCGA § 1-3-1 (b).

[22] See *Dorr*, 228 Wis.2d at 438 (I) (''To suggest that a lien can exist independent of a debt turns the purpose and provisions of a lien statute on its head.'').

[23] See OCGA § 44-14-476 (''This part shall not be construed to give any hospital . . . an independent right of action to determine liability for injuries sustained by a person or firm.'').

[24] OCGA § 44-14-470 (b).

[25] See *Parnell*, 35 Cal.4th at 603.

[26] See OCGA § 44-14-471 (a) (1).

[27] See *Adams*, 298 Ga. App. at 253; cf. *Parnell*, 35 Cal.4th at 603 (II) (where statute focuses on the tortfeasor and not the patient, it arguably does not make the patient's debt to the hospital the basis of the hospital's lien right).

[28] The fact that the legislature expressly stated that the filing of the lien would not be evidence of the patient's failure to pay a debt further supports a finding that the lien contemplated by the statute requires a debt to support it. Otherwise, this language would be mere surplusage. See *Colonial Life &c. Ins. Co. v. Heveder*, 274 Ga. App. 377, 379 (618 SE2d 39) (2005) (courts must ''seek to effectuate the intent of the legislature, . . . and to give each part of the statute meaning and avoid constructions that make some language mere surplusage'') (punctuation omitted).

determine whether a debt exists when the patient is immune from recourse pursuant to a contractual provision between the hospital and the insurer. Section 13 of the contract states that MCG *"shall* [accept] as payment in full for all Covered Services" the payment amounts contained in the contract, plus "the amounts owed by Beneficiaries pursuant to the terms of their coverage, including . . . any copayments, coinsurance, deductibles[,] and/or cost-share amounts."[29] Section 17 states that

> [MCG] hereby agrees that *in no event*, including, but not limited to nonpayment by HMHS or the Government, HMHS insolvency or breach of this Agreement, *shall [MCG] bill, charge, collect a deposit from, seek compensation, remuneration, or reimbursement from, or have any recourse against Beneficiaries,*[30] or persons other than HMHS acting on their behalf, for Covered Services provided pursuant to this Agreement. This provision shall not prohibit collection of fees for any non-covered service and/or Copayments in accordance with the terms of the Beneficiary's coverage and this Agreement.[31]

These two contractual provisions requiring the hospital to hold harmless the patient to whom services are rendered when the patient is insured through TRICARE unambiguously negate the existence of Morgan's obligation to pay MCG, and MCG concedes that Morgan owes it no debt. Thus, while the contract provisions may allow the filing of the lien under OCGA § 44-14-470 (b), the lien is invalid because other provisions of the contract negate any debt that could support it. Thus, MCG's argument that the inclusion of the second paragraph of Section 17 allows it to file a lien irrespective of the hold harmless provision is without merit.

Further, the act of filing a lien attaching Morgan's claim to the settlement proceeds violates the contract because pursuing the insurance proceeds is an attempt to seek recourse against Morgan as the claim[32] and any proceeds resulting from that claim belong solely

---

[29] (Emphasis supplied.) See also 32 CFR § 199.16 (d) (1) (stating that participating hospitals must accept TRICARE payment as payment in full for services).

[30] The Wisconsin Court of Appeals has determined that a similarly worded contract provision precludes recovery under that state's hospital lien statute because such recovery would effectively be from the beneficiary of the health plan even though Wisconsin's hospital lien statute (like Georgia's) limits attachment of the lien to the cause of action of the beneficiary. See *Dorr*, 228 Wis.2d at 442-444 (I).

[31] (Emphasis supplied.)

[32] "A 'cause of action' is generally referred to as a right to sue for a thing done or omitted to be done which causes a grievance for which the law gives a remedy. The 'cause' is the *right*

to Morgan.[33]

Finally, Section 16 of the contract contemplates that TRICARE, rather than a provider, will be the entity to recover from a third-party payor in other party liability situations and directs MCG to provide information regarding any potential liable parties to TRICARE.[34] Such recovery would only be for the TRICARE contract rate and not for the provider's normal rate. Therefore, in this case, because MCG has filed a lien for the amount of its billed charges, rather than submitting its claim to TRICARE and allowing the government to recover its expenses at the TRICARE contract rate, Morgan's recovery would be reduced in an amount beyond the contract rate — effectively Morgan would be billed for the balance of the services, which, again, is prohibited under the language of the contract.[35] Accordingly, we affirm the trial court's grant of summary judgment to Morgan.

4. Alternatively, MCG argues that the trial court erred in considering Morgan's argument that the hospital lien was precluded by the TRICARE contract because Morgan did not exhaust his

---

*of the party* to bring the suit, and the 'action' is the means of enforcing the right." (Punctuation omitted; emphasis supplied.) *Integon Indem. Corp. v. Henry Med. Center*, 235 Ga. App. 97, 98 (1) (a), n. 2 (508 SE2d 476) (1998).

[33] See *Dorr*, 228 Wis.2d at 444 (I) ("The act of filing the lien attaching the Dorrs' claim to the insurance settlement proceeds violates the hold harmless provision because Sacred Heart agreed not to seek recourse against Group Health's HMO subscribers. Pursuing the insurance proceeds is an attempt to seek recourse against the Dorrs.").

[34] In Section 16, labeled "Coordination of Benefits; Recovery Rights," the contract states:

Payment for Covered Services provided to each Member is subject to coordination with other benefits payable or paid to or on behalf of the Member, and to subrogation or recovery rights in other party liability situations.

In cases where a Beneficiary has coverage for health care services in addition to coverage under the TRICARE program, and which requires or permits coordination of benefits from the third party payor providing such other coverage, HMHS will coordinate TRICARE program benefits with other such payor(s). In such cases, [MCG] shall accept as payment for the services provided hereunder the lesser of (I) the amount due under this Agreement, or (II) the amount due under this Agreement less the amount payable or to be paid by the other payor(s), or (III) the difference between allowed billed charges and the amount paid by the other payor(s). In no event will [MCG] be paid any amounts which when combined with payments from the other payor(s) exceed the contracted rate provided in this Agreement. HMHS will in all cases coordinate benefit payments in accordance with applicable statutes, laws[,] and regulations.

[MCG] shall use its best efforts to determine the availability of other benefits, including other party liability, and to obtain any information or documentation required by HMHS to facilitate HMHS coordination of other such benefits.

See also 32 CFR § 199.12 (a).

[35] We note that Morgan filed a motion to supplement the record with documents that were not presented to the trial court before it granted his motion for summary judgment. Those documents are not properly before this Court and have played no part in this Court's review of the case. See *Caldwell v. Commercial Investment Discount*, 69 Ga. App. 13, 15-16 (24 SE2d 703) (1943). Nevertheless, we simply note that these documents appear to indicate that the contract before us at this time is likely not the contract that will exist between MCG and TRICARE in the future.

administrative remedies with TRICARE before filing his cross-claim. In order for MCG to recover on its hospital lien, however, the trial court first had to determine whether the lien was valid and, in doing so, was required to consider the TRICARE contract, which expressly incorporates federal regulations, statutes, and the manual, so judicial economy is served by allowing Morgan to present arguments to the trial court regarding the lien. Moreover, the TRICARE administrative scheme is not mandatory,[36] and the cases cited in support of MCG's argument are factually distinguishable because they are cases initiated by a TRICARE beneficiary and not cases filed by a provider attempting to collect payment.[37] MCG's logic would prevent Morgan from mounting a defense before the trial court, and the result of such preclusion would result in an inadequacy of the administrative remedy.[38] Accordingly, we find that MCG's argument is meritless.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 12, 2010 — 

*Hull & Barrett, David E. Hudson,* for appellant.
*Talley, French & Kendall, Michael C. Kendall, Nicholson & Revell, Harry D. Revell, Bell & Bell, David B. Bell,* for appellee.

---

[36] See generally 32 CFR §§ 199.9 to 199.11.

[37] See, e.g., *Scavullo v. MCG Health*, Case No. 08-005 doc. 34 at 8 (S.D. Ga., decided February 12, 2009). Moreover, none of the cases cited by MCG is binding authority. See, e.g., *Hofmann v. Hammack*, 82 FSupp.2d 898, 900 (N.D. Ill. 2000); *Trauma Svc. Group v. Keating*, 907 FSupp. 110 (E.D. Pa. 1995).

[38] See *Moss v. Central State Hosp.*, 255 Ga. 403, 404 (339 SE2d 226) (1986).

