**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1149. MCG HEALTH, INC. v. KIGHT.

ANDREWS, Presiding Judge.

MCG Health, Inc. appeals from the trial court's ruling on summary judgment that the hospital lien it filed pursuant to OCGA § 44-14-470 et seq. for hospital care furnished to Christopher Kight was void, and from the award of attorney fees and expenses of litigation to Kight pursuant to OCGA § 13-6-11. For the following reasons, we reverse.

MCG Health (the Hospital) operates a hospital under the name MCG Medical Center. On March 21, 2007, the Hospital filed a lien pursuant to OCGA § 44-14-470 et seq. for hospital care furnished to Kight from February 4 to February 20, 2007, for hospital charges in the amount of $36,177.68. It is undisputed that the hospital care was furnished to Kight for injuries he sustained in an automobile accident in which

Kight was a passenger in a car driven by an allegedly intoxicated driver (the tortfeasor), and that the Hospital furnished the care pursuant to a contract with Kight's managed health care insurer, Blue Cross/Blue Shield (Blue Cross).

Pursuant to OCGA § 44-14-470 (b), the lien for hospital care furnished to Kight was a lien "upon any and all causes of action" accruing to Kight on account of the injuries that necessitated the care. In December 2007, after Kight received an offer from the tortfeasor to settle his cause of action for the injuries, Kight demanded that the Hospital cancel its lien against the cause of action because, based on payments agreed to by the Hospital and Blue Cross under their contract, there were no unpaid charges owed to the Hospital for care furnished to Kight. Kight contended that, because no debt was owed the Hospital under the contract, the Hospital was precluded from asserting a lien under OCGA § 44-14-470 (b). After the Hospital failed to cancel the lien, Kight brought an action against the Hospital in March 2008 (for declaratory and equitable relief) claiming that, when the lien was filed, there were no unpaid charges for care furnished by the Hospital under the contract; seeking a ruling that the lien was invalid and void; and also seeking the award of attorney fees and expenses pursuant to OCGA § 13-6-11. The Hospital answered and Kight subsequently moved for partial summary judgment. On September 24, 2008, the

Hospital filed an amended lien pursuant to OCGA § 44-14-470 et seq. The amended lien stated that it "supercedes the previous lien . . . only as to the total charges presently owed" and that the Hospital furnished care to Kight "from February 4, 2007 to February 20, 2007, resulting in unpaid charges in the amount of $863.10." After filing the amended lien, the Hospital amended its answer and filed a counterclaim against Kight in December 2009 stating that the Hospital furnished Kight additional care for his injuries in February, March, and April of 2007; that Kight owed the Hospital for unpaid deductibles and co-pays in the amount of $863.10 for the care; and seeking a judgment in the amount of $863.10 to enforce the lien as amended against Kight's cause of action against the tortfeasor.

After Kight moved for summary judgment, the Hospital also moved for summary judgment on its counterclaim and on Kight's claims. In February 2010, the trial court entered an order granting partial summary judgment in favor of Kight on his claims seeking declaratory and equitable relief; ruling that the hospital lien filed on March 21, 2007, was invalid and "void ab initio"; directing the clerk to cancel the lien; and ruling that the Hospital was not entitled to use the lien to collect any unpaid deductibles or co-pays sought in its counterclaim. The trial court denied Kight's motion for summary judgment on his claim for attorney fees pursuant to OCGA § 13-

3

6-11, and denied the Hospital's motion for summary judgment on all issues. In June 2012, the trial court entered an order (pursuant to consent of the parties) dismissing with prejudice Kight's remaining counts in the complaint (except the count seeking attorney fees and expenses), and ruling that Kight owed the Hospital the $863.10 amount sought in its counterclaim for unpaid deductibles and co-pays, but with payment deferred until resolution of Kight's claim for attorney fees and expenses. In August 2012, the trial court appointed a special master to conduct a hearing and rule on Kight's claim for attorney fees and expenses pursuant to OCGA 13-6-11, and on October 9, 2012, after an evidentiary hearing, the special master awarded Kight attorney fees in the amount of $40,950.00 and expenses in the amount of $3,376.60. On October 29, 2012, the trial court entered its final judgment in the case adopting the special master's award subject to a set-off in the amount of $863.10 in favor of the Hospital.

1. The Hospital contends that the trial court erred by granting partial summary judgment in favor of Kight on his claims that the hospital lien filed on March 21, 2007, pursuant to OCGA § 44-14-470 (b) was invalid and void on the basis that, when the lien was filed, there was no debt owed to the Hospital for the care furnished to Kight under the contract with Blue Cross.

4

Kight was a member of the Blue Cross managed health care insurance plan, and the hospital care furnished to Kight for injuries he suffered in the accident was covered under a contract between the Hospital and Blue Cross. Under the contract, the Hospital agreed to discount its billed charges for covered hospital care and accept the discounted amount as "payment in full" for the covered care provided to Blue Cross members. The contract allowed the Hospital to bill Kight directly for deductibles and co-pays owed by Kight to the Hospital, but the Hospital agreed under the contract not to balance-bill Kight for the difference between the Hospital's billed charges and the discounted amount due under the contract.

The record shows that, after the automobile accident, Kight initially received hospital care for the period from February 4, 2007, until he was discharged on February 8, 2007. Under the contract with Blue Cross, the Hospital's billed charges during that period were initially stated as $35,294.49 but were subsequently adjusted to show billed charges of $34,794.49. Pursuant to the contract, the Hospital "wrote off" $23,603.81 of the charges for that period resulting in a discounted amount due to the Hospital under the contract of $11,190.68, plus $500.00 in deductibles or co-pays owed to the Hospital by Kight. On March 6 and 7, 2007, the Hospital received insurance payments in the amount of $11,690.68 in full payment of amounts due

5

under the contract for that period – $10,000.00 from the tortfeasor's medical payments insurance coverage (which was considered primary insurance under the contract) and $1,690.68 from Blue Cross. The payment of $1,690.68 from Blue Cross included $500.00 retained by the Hospital to cover deductibles or co-pays owed by Kight. A subsequent audit resulted in a refund to Blue Cross in November 2007 and recognized that Kight was still responsible for deductibles or co-pays for the care provided from February 4 to February 8. But at the time the Hospital filed the lien on March 21, 2007 (for hospital care furnished from February 4 thru February 20) the Hospital's records reflected that no amounts were owed under the Blue Cross contract for initial care provided from February 4 to February 8.

Subsequent to February 8, Kight received additional care furnished by the Hospital for his injuries. On February 15, 2007, Kight received care resulting in billed charges of $294.00 discounted to $119.98 and paid by Blue Cross on March 30, 2007, and a deductible or co-pay owed by Kight of $85.82. On February 20, 2007, Kight received care resulting in billed charges of $345.39 discounted to $141.12 and paid by Blue Cross on March 30, 2007, and a deductible or co-pay owed by Kight of $100.66. On February 27, 2007, Kight received care resulting in billed charges of $252.00 discounted to $141.12 and paid by Blue Cross on March 30, 2007, and a

6

deductible or co-pay owed by Kight of $35.28. On March 2 to March 15, 2007, Kight received care resulting in billed charges of $1,124.45 discounted to $629.58 and paid by Blue Cross on April 30, 2007, and a deductible or co-pay owed by Kight of $157.40. And on April 3 to April 5, 2007, Kight received care resulting in billed charges of $599.60 discounted to $335.78 and paid by Blue Cross on May 16, 2007, and a deductible or co-pay owed by Kight of $83.94. Accordingly, for hospital care furnished from February 4 to April 5, 2007, Kight owed the Hospital a total of $863.10 in deductibles or co-pays, the same amount the Hospital sought from Kight in its counterclaim, and the same amount that the trial court awarded to the Hospital in the consent order on the counterclaim and in the final judgment.

Pursuant to OCGA § 44-14-471 (b), the Hospital filed the lien on March 21, 2007, stating "the amount claimed to be due for the hospital . . . care" ($36,177.68); stating "the dates of admission and discharge of the patient" (from February 4 to February 20, 2007) for the furnished care; and showing that the lien was filed, as required, "within 75 days after the person has been discharged . . ." As shown above, when the Hospital filed the lien, the amount still owed to the Hospital under the Blue Cross contract for care furnished from February 4 to February 20 was $261.10 in unpaid discounted payments due from Blue Cross, and $186.48 in unpaid deductibles

7

or co-pays due from Kight. During that period, there were also unpaid "write-offs" from the Hospital's billed charges: $23,603.81 written off for treatment furnished from February 4 to February 8, and $378.29 written off for additional treatment furnished between February 8 and February 20.

Despite the unpaid sums, the trial court granted partial summary judgment in favor of Kight and declared the hospital lien void on the basis that, when the lien was filed on March 21, 2007, no debt was owed to the Hospital under the contract with Blue Cross for care furnished to Kight during the lien period from February 4 to February 20, 2007. In reaching this conclusion, the trial court relied on the decision in *Constantine v. MCG Health, Inc.*, 275 Ga. App. 128 (619 SE2d 718) (2005), which found under similar circumstances that the lack of debt owing to a hospital under the contract between the hospital and the injured person's health care insurer precluded a hospital lien under OCGA § 44-14-470 (b). Because we find that this holding in *Constantine* was incorrect and has been implicitly overruled by subsequent Georgia Supreme Court authority, the trial court's ruling was error and we reverse.

Pursuant to OCGA § 44-14-470 (b), a hospital operating in this state

shall have a lien for the reasonable charges for hospital . . . care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished

8

or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital . . . care. . . . The lien provided for in this subsection is only a lien against such causes of action and shall not be a lien against such injured person, such legal representative, or any other property or assets of such persons and shall not be evidence of such person's failure to pay a debt.

The statute enables hospitals to collect payment for unpaid reasonable charges for furnishing hospital care to an injured person by giving the hospital a lien against any cause of action that accrues to the injured person arising out of the injuries that necessitated the care. The cause of action referred to by the statute is the injured person's right to claim that a tortfeasor caused the personal injuries that necessitated the hospital care, and to seek compensation from the tortfeasor for the injuries and economic damages including charges for the hospital care. Where a tortfeasor (or an insured tortfeasor's insurance company) makes liability payments to the injured person to cover the economic damages caused by the tortfeasor, the payments are subject to the hospital lien for the unpaid charges for hospital care. *State Farm Mut. Automobile Ins. Co. v. Adams*, 288 Ga. 315, 319 (702 SE2d 898) (2010). "In short, the lien allows the hospital to step into the shoes of the [injured person] for purposes of receiving payment from the [tortfeasor or the] tortfeasor's insurance company for

9

economic damages represented by the hospital bill." Id. at 318; *Southern Gen. Ins. Co. v. Wellstar Health Systems, Inc.*, 315 Ga. App. 26, 30 (726 SE2d 488) (2012).

Kight's cause of action against the tortfeasor for injuries and economic damages he sustained in the accident was not limited to seeking economic damages represented by the discounted amounts paid on the Hospital's billed charges under the contract with Blue Cross. Rather, Kight was entitled to recover medical expenses arising from his injuries, including hospital charges, that were "reasonable and necessary." *Allen v. Spiker*, 301 Ga. App. 893, 896 (689 SE2d 326) (2009). Moreover, under the collateral source rule, Kight was entitled to seek full recovery from the tortfeasor of reasonable and necessary hospital charges undiminished by insurance payments or "write-offs" under the Hospital's contract with Blue Cross. *Olariu v. Marrero*, 248 Ga. App. 824 (549 SE2d 121) (2001). A qualification applies to the rule in this case because the record shows that the tortfeasor's insurer paid $10,000.00 of the Hospital's charges. To prevent a double recovery, Kight was not entitled to recover in judgment against the tortfeasor what has already been paid on the tortfeasor's behalf by an insurer. *Candler Hosp., Inc. v. Dent*, 228 Ga. App. 421, 423 (491 SE2d 868) (1997); *Olariu*, 248 Ga. App. at 826. It follows that Kight's cause of action against the tortfeasor entitled him to seek recovery of the Hospital's

10

undiminished billed charges as the reasonable and necessary hospital charges he incurred for hospital care furnished from February 4 to February 20, 2007. In this case that amount would be the Hospital's billed charges of $34,794.49 – reduced by $10,000.00 paid by the tortfeasor's insurer – for a total of $24,794.49.

Under the lien provisions of OCGA § 44-14-470, the Hospital steps into Kight's shoes for purposes of receiving payment from the tortfeasor or the tortfeasor's insurance company for economic damages represented by the hospital charges. *Adams*, 288 Ga. at 319; see *Cheek v. J. Allen Couch & Son Funeral Home*, 125 Ga. App. 438, 445 (187 SE2d 907) (1972) (predecessor lien statute (Ga. Code Ann. § 67-2207 ) provided lien for hospital charges against injured patient's cause of action against tortfeasor for the "extent of [the hospital's reasonable charges] . . . but not beyond the extent of [the tortfeasor's] liability for damages. . . ."). Since Kight's cause of action for recovery of hospital charges incurred because of his injuries was not limited to the discounted charges paid to the Hospital under the Blue Cross contract, there is no reason to conclude that the Legislature intended for the Hospital's lien rights under OCGA § 44-14-470 to be limited by payment of the discounted charges or the absence of debt owed to the Hospital under the contract. *MCG Health, Inc. v. Owners Ins. Co.*, 288 Ga. 782, 784-785 (707 SE2d 349) (2011)

11

(absence of debt owed to hospital under contract with injured patient's health care insurance plan did not preclude hospital lien under OCGA § 44-14-470 et seq.). Rather, the plain meaning of OCGA § 44-14-470 (b) is that the "lien for the reasonable charges for hospital . . . care" in the statute refers to the same reasonable charges for hospital care that the injured person to whom the care was furnished was entitled to seek in a cause of action against the tortfeasor. Since Kight could have sought recovery of $24,794.49 of the Hospital's billed charges as reasonable and necessary hospital charges incurred for his injuries, the Hospital was entitled to assert a lien under OCGA § 44-14-470 (b) for the unpaid portion of those billed charges as the reasonable charges for hospital care furnished to Kight. When the lien was filed on March 21, 2007, the unpaid portion of the billed charges for the hospital care furnished to Kight by the Hospital for the period from February 4 to February 20 (as stated in the lien) totaled $24,429.68 as derived from the following: the unpaid write-off of $23,603.81 for care furnished from February 4 to February 8; the unpaid write-off of $378.29 for care furnished between February 8 and February 20; the unpaid discounted payments still due under the contract from Blue Cross in the amount of $261.10; and the unpaid deductibles or co-pays still due under the contract from

12

Kight in the amount of $186.48.[1] Accordingly, the trial court erred by ruling that the Hospital's lien filed on March 21, 2007, was "void ab initio" and subject to cancellation because of the absence of debt owed to the Hospital under the contract with Blue Cross.

The Hospital's contract with Blue Cross and its members provided that the Hospital would write off or reduce portions of its billed charges for hospital care, and that the Hospital would accept the reduced charges as full payment for services covered under the contract without balance-billing members for the difference. The absence of debt owed to the Hospital under the contract with Blue Cross, and the Hospital's agreement in the contract not to balance-bill Blue Cross members to collect the difference between the reduced charges and the billed charges, cannot be construed as a waiver or preclusion of the Hospital's lien rights under OCGA § 44-14-470 et seq. In *MCG Health, Inc. v. Owners Ins. Co.*, 302 Ga. App. 812 (692 SE2d 72) (2010), this Court held that, because no debt was owed to the hospital under the

---

[1] The lien filed on March 21, 2007, for the unadjusted billed charges of $36,177.68 was extinguished to the extent the hospital's reasonable charges were paid. Despite the unpaid charges for the lien period from February 4 to February 20, 2007, the Hospital amended the lien on September 24, 2008, to reflect only unpaid deductibles or co-pays. We need not determine whether the amended lien was perfected under OCGA § 44-14-471. In any event, any issue as to unpaid charges stated in the amended lien was settled in the June 2012 consent order.

13

contract between the hospital and the injured patient's health care insurance provider, there was no debt to support a hospital lien under OCGA § 44-14-470 (b) so the asserted lien was invalid. In support of this holding, we cited to foreign authority concluding that "because the [contract between the hospital and the insurance plan] negates the existence of a debt owed by [the injured plan member] to the hospital[,] and because the filing of the lien violates the hospital's agreement not to seek recourse against [the plan member], the hospital is precluded under the contract from asserting its lien rights." Id. at 816 n. 14 (quoting *Door v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 444 (I) (597 NW2d 462) (1999)). Accordingly, we held in *MCG Health* that, when a contract between the hospital and the injured person's health care insurer requires the hospital to accept reduced amounts as "payment in full" for billed charges, and the hospital agrees not to balance-bill the injured person for billed charges in excess of the reduced payments, the contract negates any debt owed by the injured person to the hospital, and the absence of debt precludes a lien under OCGA § 44-14-470 (b). *MCG Health*, 302 Ga. App. at 816-820. As additional authority for this holding, *MCG Health*, supra, at 813, cited to our decision in *Constantine*, 275 Ga. App. 128.

14

In *Constantine*, a similar contract between the hospital and the health care insurer required the hospital to accept reduced amounts as full payment for billed hospital charges, and the hospital agreed not to balance-bill the injured insured to recover billed charges in excess of the agreed-upon reduced amounts. Id. at 129. The contract in *Constantine* also provided that in no event would the hospital have "any recourse" against an injured insured for hospital services covered by the agreement. Id. at 130. *Constantine* found that these provisions prohibited balance-billing by the hospital and were "written to protect both [the health care insurer] and its insureds from any claims for repayment in excess of those agreed to." Id. Considering these provisions, *Constantine* held that the health care insurer's payment to the hospital of reduced amounts due under the contract extinguished any debt owed to the hospital under the contract, and the absence of debt precluded the hospital from filing a lien under OCGA § 44-14-470 to collect for unpaid hospital services in excess of the reduced amounts. Id. at 130-131; accord *MCG Health*, 302 Ga. App. at 813 n. 4 (citing to *Constantine* for the proposition that "hospital lien could not be maintained because balance billing was prohibited by contract between the individual's insurer and the health care provider, and the health care provider had already accepted contractual payment from individual's insurer.").

15

In *MCG Health, Inc.*, 288 Ga. 782, the Supreme Court granted certiorari to consider our holding in *MCG Health*, 302 Ga. App. 812, and rejected our construction of OCGA § 44-14-470 (b). The Supreme Court found that we misconstrued OCGA § 44-14-470 (b) when we held that the lien under this statute was invalid on the basis that "the patient was immune from debt based on the contract" and that "there was no debt owing [under the contract] for the hospital to collect." *MCG Health*, 288 Ga. at 784. The Supreme Court held that OCGA § 44-14-470 (b) is silent as to the existence of a debt to support the lien, and that this Court erroneously "impose[d] a requirement to the statute that was not expressly stated therein." Id. at 785. Although the Supreme Court did not specifically address or overrule our similar holding in *Constantine*, 275 Ga. App. 128 on this basis, in light of the decisions in *MCG Health*, 288 Ga. at 784-785, and in *Adams*, 288 Ga. at 319, we conclude that *Constantine* was implicitly overruled in part and will no longer be followed to the extent it held that the absence of debt owed to a hospital under a contract with a health care insurer precludes a hospital lien under OCGA § 44-14-470.

After finding that the absence of debt owed to the hospital under the contract did not preclude the hospital lien, the Supreme Court in *MCG Health* employed the

16

"right for any reason" rule to affirm the judgment invalidating the lien on the basis that: (1) Tricare, the federal insurance program pursuant to which the hospital services were provided, was governed by federal regulations that preempted the lien under OCGA § 44-14-470, and (2) the contract between the hospital and Tricare contained a provision prohibiting the hospital from "any recourse" against the insured for covered services provided under the contract. *MGC Health*, 288 Ga. at 785-786. The hospital in *MCG Health* asserted the lien for the full amount of the hospital's billed charges, including amounts payable under the Tricare insurance plan. Id. at 784. The Supreme Court found that the "any recourse" provision prohibited the hospital lien because any attempt to collect the lien for those amounts against tort settlement proceeds (which had already been paid out to the injured insured) would cause the insured an "immediate financial loss" and defeat the purpose of the contract "for Tricare beneficiaries to have their healthcare costs paid in full at the negotiated rates without fear of further recourse." Id. at 786.

The contract between the Hospital and Blue Cross in this case was not governed by Tricare or similar federal regulations and did not contain a similar provision prohibiting the Hospital from "any recourse" against a Blue Cross insured for covered services under the contract. So the manner in which those federal

17

regulations or an "any recourse" contractual provision affects lien rights under OCGA § 44-14-470 is not at issue in this case. As the special concurrence points out, the contract between the hospital and the health care insurer in *Constantine*, supra, did contain an "any recourse" provision similar to the provision addressed by the Supreme Court in *MCG Health*, supra. *Constantine*, 275 Ga. App. at 130. To the extent *Constantine* also relied on the "any recourse" provision to hold that the hospital lien in that case was invalid, we do not address that holding.

2. Because Kight's underlying claims against the lien failed, he was not entitled to an award of attorney fees and expenses of litigation pursuant to OCGA § 13-6-11. *Monterrey Mexican Restaurant &c., Inc. v. Leon*, 282 Ga. App. 439, 451-452 (638 SE2d 879) (2006).

*Judgment reversed. Dillard, Boggs, Ray, Branch and McMillian, JJ., concur. Phipps, C. J., Barnes, P. J., Ellington, P. J., Doyle, P. J., Miller and McFadden, JJ., concur and concur specially.*

A13A1149. MCG HEALTH, INC. v. KIGHT.

BARNES, Presiding Judge, concurring fully and specially.

While I concur fully with the majority, I write separately to emphasize that *Constantine v. MGC Health, Inc.*, 275 Ga. App. 128 (619 SE2d 718) (2005) remains good law for the proposition that a hospital can contractually waive its right to collect on a hospital lien through a "no recourse" provision in the hospital's contract with a patient's health insurer.

In *MCG Health, Inc. v. Owners Ins. Co.*, 288 Ga. 782, 785 (1) (707 SE2d 349) (2011), the Supreme Court of Georgia held that OCGA § 44-14-470 (b) of the hospital lien statute does not require "that the debt . . . be owed by the patient in order for a hospital to foreclose on a lien." Based on *MCG Health*, under the hospital lien statute, a hospital may pursue a lien even in the absence of an outstanding debt owed by the patient to the hospital under the terms of the contract between the hospital and the patient's health insurer.

But that does not end the matter in all cases. It is a well-settled principle of Georgia law that, "absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights." (Citation and punctuation omitted.) *Aetna Workers' Comp Access, LLC v. Coliseum Medical Center*, 322 Ga.

App. 641, 647-648 (2) (746 SE2d 148) (2013). Consistent with this longstanding principle, Georgia law permits a hospital to contract with a patient's health insurer to limit or preclude its statutory rights under the hospital lien statute, as the Supreme Court itself recognized in *MCG Health.* The Supreme Court in *MCG Health* held that the lien at issue was invalid and uncollectible because certain federal regulations preempted the hospital lien statute under the circumstances of that case. See id. at 785-786 (2) (a). Significantly, however, the Supreme Court went on to hold that even if those federal regulations were not applicable, the lien at issue was invalid and uncollectible under the specific terms of the contract between the hospital and the patient's health insurer prohibiting the hospital from "hav[ing] any recourse" against the insured patient. Id. at 783, 786 (2) (b).[1] The Supreme Court reasoned that allowing the hospital to collect on a lien where it would cause the insured patient an "immediate financial loss" – such as collecting from the funds awarded to the patient

---

[1] The provision of the contract stated in relevant part:
Hospital hereby agrees that in no event, including, but not limited to nonpayment by HMHS or the Government, HMHS insolvency or breach of this Agreement, shall Hospital bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement *or have any recourse against Beneficiaries*, or persons other than HMHS acting on their behalf, *for Covered Services provided pursuant to this Agreement.*
(Emphasis supplied.) *MCG Health*, 288 Ga. at 783. For ease of reference, the italicized provision of the contract will be referred to as the "no recourse" provision.

2

under a settlement reached between the patient and the third-party tortfeasor's liability insurer – would violate the "no recourse" provision of the contract, the very purpose of which was for insured patients "to have their healthcare costs paid in full at the negotiated rates without fear of further recourse." Id. at 786 (2) (b).

This Court reached a similar conclusion in *Constantine*, 275 Ga. App. 128. In that case, the hospital filed a lien pursuant to OCGA § 44-14-470 (b) on the patient's cause of action against a third-party tortfeasor in anticipation of collecting from any funds awarded to the patient in a settlement or judgment. Id. at 129. Among other things, we concluded that the hospital could not pursue the lien in the face of a "no recourse" provision of the contract between the hospital and patient's health insurer that was similar to the provision found in *MCG Health*.[2] See id. at 129, 130-131 (1).

---

[2] The provision of the contract stated in relevant part:
PAYMENT. [MCG] shall bill [Aetna] for Hospital Services rendered to Members according to the terms of this Agreement. . . . . [MCG] hereby agrees that in no event, including, but not limited to non-payment by [Aetna,] [Aetna's] insolvency[,] or breach of this Agreement, shall [MCG] bill, charge, collect a deposit from, seek remuneration or reimbursement from, *or have any recourse against Member* or persons other than [Aetna] acting on their behalf *for services listed in this Agreement.*
(Emphasis supplied.) *Constantine*, 275 Ga. App. at 129.

In reaching this conclusion, we noted that "[n]othing in the agreement or the record suggests that either party had the [hospital lien] statute's distinction between persons and causes of action in mind when they framed [the "no recourse"] provision, which was written to protect both [the insurer] and its insureds from any claims for repayment in excess of those agreed to." Id. at 130 (1). We further noted that the parties' obligations were set "by the terms of [the] negotiated contract" and that the hospital would be held "to the terms of the bargain it struck." Id.

*Constantine*, therefore, ultimately turned on this Court's interpretation of the "no recourse" provision of the contract between the hospital and the patient's insurer. In this regard, we construed the language of the "no recourse" provision as precluding the hospital from collecting on a lien from funds awarded to the patient in a settlement or judgment entered in the third-party tort action. Our construction of the "no recourse" provision in *Constantine* does not conflict with *MCG Health*, which contained a similarly worded provision and construed it as precluding a hospital from collecting on a lien in circumstances where it would cause "immediate financial loss" to the patient, such as collection from funds awarded to the patient in a settlement. *Constantine* thus was not implicitly overruled by *MCG*

4

*Health* to the extent that it relied on the "no recourse" provision, as the majority recognizes.[3]

It follows that under the reasoning of *MCG Health* and *Constantine*, a hospital can contractually waive its right to collect on a hospital lien from funds awarded to the patient in a settlement or judgment entered in a third-party tort action through the inclusion of a "no recourse" provision in the hospital's contract with the patient's health insurer. But the contract between MCG Health and Blue Cross / Blue Shield of Georgia in the present case is materially different from the contracts in *MCG Health* and *Constantine* because it did not contain a similarly worded "no recourse" provision. Rather, the provision relied upon by Appellee Christopher Kight in an effort to hold MCG Health's lien invalid and uncollectible simply stated that

> [MCG Health] agrees to accept [Blue Cross's] payments, as provided in this Agreement as payment in full for Eligible Services provided to PPO Covered Persons. [MCG Health] may bill PPO Covered Persons for hospital services rendered that are not PPO Covered Services, applicable deductibles, or co-insurance amounts provided in PPO Covered Person's PPO Membership Agreement . . . . Without limiting the foregoing,

---

[3] I agree with the majority that *Constantine* was implicitly overruled by *MCG Health* to the extent that it held that a hospital cannot pursue a lien under OCGA § 44-14-470 (b) in the absence of an outstanding debt owed to the hospital under the contract between the hospital and the patient's health insurer.

5

> [MCG Health] agrees not to bill PPO Covered Persons for any charge discount amount provided to PLAN.

In contrast to the contracts found in *MCG Health* and *Constantine*, the contract at issue here prevented balance-billing but was silent as to what other avenues of recourse were available to MCG Health. Given the absence of a "no recourse" provision, the contract did not preclude MCG Health from pursuing a lien under OCGA § 44-14-470 (b) against any funds awarded to Kight in a settlement or judgment in the third-party tort action. And, as previously noted, the hospital lien statute, standing alone and without any evidence of a contractual waiver of the statute by the hospital, did not preclude MCG Health from pursuing a lien for reasonable charges for hospital care and treatment even if Kight personally owed no debt to MCG Health at the time the lien was filed. Accordingly, I agree with the majority that the trial court erred in invalidating the hospital lien filed by MCG Health under the specific circumstances of this case.

I am hereby authorized to state that Phipps, C.J., Ellington, P.J., Doyle, P.J., Miller and McFadden, J.J., join in this special concurrance.

6