**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A1996. MCG HEALTH, INC. v. PERRY et al.                    DO-100

DOYLE, Presiding Judge.

MCG Health, Inc. ("MCG"), appeals from the certification of a class action suit filed by Donna Perry and Manuel Weisman to challenge MCG's practice of filing hospital liens upon injured patients' causes of action against the tortfeasors who allegedly caused their injuries. MCG contends that the trial court erred (1) by concluding that the class action requirements of OCGA § 9-11-23 were met, and (2) by denying its motion for summary judgment as to Perry and Weisman's individual claims. For the reasons that follow, we reverse the trial court's class action certification and remand the case for reconsideration of the summary judgment motion.

Plaintiffs Perry and Weisman "have the burden of establishing their right to class certification in the trial court, and we review the trial court's decision in certifying a class action for abuse of discretion."[1]

MCG operates the MCG Medical Health Center, and the complaint alleges that in 2006, Perry was injured in a car wreck and treated for her injuries at the Center. After Perry was discharged, MCG filed a notice of lien in the amount of $8,076.54. Perry's healthcare insurer had paid MCG the negotiated rate for Perry's hospital costs, and a balance of $150 remained, representing the co-pay for which Perry was responsible. Perry paid this amount from the settlement of her tort case, but MCG did not thereafter cancel the lien.

Weisman was also treated by the Center for injuries from a separate automobile wreck, and despite being paid by Weisman's health insurance carrier at the agreed-upon rates, MCG filed a lien in the amount of $17,043 for payment on his account. Weisman's account status was paid in full, but MCG likewise did not cancel the lien at that time.

---

[1] *Doctors Hosp. Surgery Ctr., LP v. Webb*, 307 Ga. App. 44, 45 (704 SE2d 185) (2010).

With the liens still pending, Perry and Weisman filed the present case in February 2009 asserting, inter alia, claims for breach of contract and fraud, and seeking injunctive relief, damages, and class certification. One year later, in February 2010, MCG cancelled its liens for both plaintiffs' accounts. In March 2010, the plaintiffs moved for class action certification, and in April 2010, MCG moved for summary judgment as to the plaintiffs' individual claims. Following a hearing, the trial court granted the class certification and denied MCG's summary judgment motion, giving rise to this appeal.

1. MCG contends that the trial court abused its discretion by ruling that the plaintiffs' case meets the statutory criteria for class action certification. We agree.

OCGA § 9-11-23 authorizes a plaintiff to sue as a class representative, and provides as follows, in relevant part:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) The representative parties will fairly and adequately protect the interests of the class.

3

If these prerequisites are met, a plaintiff must also demonstrate one of the following criteria: separate actions would risk inconsistent adjudications or impede other plaintiffs interests, the party opposing the motion has acted on grounds generally applicable to the class, or that common questions predominate any individual questions and class resolution is superior to other methods.[2]

> In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits[,] but whether the requirements of OCGA § 9-11-23 (a) have been met. . . . [T]he U. S. Supreme Court has recognized that the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.[3]

MCG argues that the commonality requirement of OCGA § 9-11-23 (a) (2) has not been met. The plaintiffs' appellate brief asserts that the common questions arise from one "central and predominating issue in this case: Should a hospital that agrees to provide health services for a negotiated price stand by its word?"

---

[2] See OCGA § 9-11-23 (b).

[3] (Citations and punctuation omitted.) *McGarry v. Cingular Wireless, LLC*, 267 Ga. App. 23, 25 (1) (599 SE2d 34) (2004). See *Amchem Products, Inc. v. Windsor*, 521 U. S. 591, 622 (IV) (A) (117 SCt 2231, 138 LE2d 689) (1997).

[But] any competently crafted class complaint literally raises common questions . . . What matters to class certification is not the raising of common *questions* — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.[4]

[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [OCGA § 9-11-23 (a)] have been satisfied. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.[5]

---

[4] (Punctuation omitted; emphasis supplied.) *Wal-Mart Stores, Inc. v. Dukes*, __ U. S. __ (II) (A) (131 SCt 2541, 180 LE2d 374) (2011). See also *American Debt Foundation, Inc. v. Hodzic*, 312 Ga. App. 806, 808 (720 SE2d 283) (2011) ("[I]t is appropriate that we look to federal cases interpreting Rule 23 of the Federal Rules of Procedure, the rule upon which OCGA § 9-11-23 was based, for guidance.") (punctuation omitted).

[5] (Punctuation omitted.) *Rite Aid of Ga., Inc. v. Peacock*, 315 Ga. App. 573, 574-575 (726 SE2d 577) (2012), quoting *Dukes*, __ U. S. at __ (II) (A).

5

Here, an examination of the plaintiffs' claims reveals a variety of factual and legal issues resulting in numerous individualized inquiries and answers. There are two main relationships that bear on the issues in this case: the relationship between MCG and the insurance providers it contracts with, and the relationship between the patients and their insurance providers. Each of these relationships is governed by a contract. It is undisputed that MCG treats insured patients pursuant to at least 35 different contracts with 35 different insurance carriers. And each of these providers issues contracts for insurance to its insureds. Thus, the claims of the putative class require analysis of each pair of contracts for each of the 35 insurance providers.

Further, resolution of the various issues raised by this litigation will depend on analysis of multiple contractual provisions within this universe of contracts. For example, because the plaintiffs claim that all hospital payments are limited to those specified in contracts between the insurance providers and MCG, MCG has raised the issue of whether the individual patients can be considered third-party beneficiaries of those contracts. Therefore, each contract – the class member's insurance policy and the contract between MCG and the insurance provider – must be analyzed to determine how it might affect whether the class member can be considered a third-party beneficiary of the agreement between MCG and the insurance provider.

6

Also, MCG below and on appeal raised the issue of whether certain class members who negotiated with MCG to resolve its liens engaged in a voluntary payment to settle the liens, which settlement could bar refund for that individual in this case.[6] Determining the applicability of the voluntary payment doctrine to each plaintiff would require individualized analysis under the facts of each lien resolution: "Pursuant to the voluntary payment doctrine embodied in [OCGA § 13-1-13], the party seeking recovery must prove that the payment was not voluntarily made because certain material facts were not known at the time of payment or a valid reason existed for failure to determine the truth."[7]

Other differences become evident when considering the need to analyze the contracts between MCG and the insurance carriers to determine whether MCG's practice breached those contracts. For example, MCG points to language in certain of its contracts stating that "[n]othing herein shall be construed to preclude Contract Hospital from seeking and obtaining payment from sources of payment other than

---

[6] See, e.g., *Watts v. Promina Gwinnett Health System*, 242 Ga. App. 377, 380 (1) (530 SE2d 14) (2000).

[7] (Punctuation omitted.) Id.

[the insurance provider] and [the insured]."[8] Indeed, in *MCG Health, Inc. v. Kight*,[9] decided after the ruling and briefing in this case, this Court held that MCG was entitled to assert a lien under OCGA § 44-14-470 (b) for reasonable hospital charges that exceeded the agreed-on amounts authorized by a Blue Cross Blue Shield contract.[10] This is because, as a matter of tort law, an injured plaintiff's

> cause of action against [a] tortfeasor for injuries and economic damages . . . [is] not limited to seeking economic damages represented by the discounted amounts paid on the [h]ospital's billed charges under the contract with [the insurance provider]. Rather, [a plaintiff is] entitled to recover medical expenses arising from his injuries, including hospital charges, that [are] "reasonable and necessary."[11]

---

[8] MCG also points to contractual language in a different contract, contending that it *requires* MCG to seek reimbursement from tortfeasors before seeking payment from the insured: "When a party other than [an insurance provider] is identified as having primary responsibility for payment of or reimbursement for Covered Services under the Coordination of Benefits provision of a Member's Health Benefits Plan, Hospital will bill and make all reasonable efforts to collect from such party for the value of Covered Services."

[9] __ Ga. App. __ (750 SE2d 813) (2013).

[10] See id. at __ (1).

[11] (Punctuation omitted.) Id. at __ (1), quoting *Allen v. Spiker*, 301 Ga. App. 893, 896 (689 SE2d 326) (2009) ("The law requires proof that the medical expenses arose from the injury sustained, and that they are reasonable and necessary before they are recoverable.") (punctuation omitted).

Thus, every insurance provider's contract implicated in each plaintiff's case would have to be analyzed, along with any coordination of benefits language in individual plaintiff's policies that may bear on this question.

Another question to be resolved under the various contracts is whether there is contractual language (absent in *Kight*) that would prevent such a recovery by the hospital, such as a "no recourse" waiver.[12] The existence, variety, or changes in such language over time for various class members' claims further militates against class resolution.

Finally, the trial court's order itself identified a litany of other questions raised by the complaint:

> whether [MCG] informed class members of the material facts and relevant terms of contracts; whether class members knew, could have known, or should have known of the facts concerning the existence and the terms of hospital service contracts; factual issues relating to [MCG's] conduct and activities in filing hospital liens and collecting sums in excess of the payments submitted by the healthcare providers; whether [MCG] engaged in deceptive acts and practices by filing hospital liens to collect more than amounts specified in the hospital service contracts; whether [MCG] acted willfully, knowingly, or recklessly in engaging in the acts and conduct alleged; the liability of

---

[12] See *Kight*, __ Ga. App. at __, Barnes, J., concurring fully and specially.

[MCG]; the appropriate measure of damages and the appropriate remedies; [MCG's] affirmative defenses; . . . .

The trial court's order in one sentence concluded that "[t]he presence of these common questions satisfies the commonality requirement." But, as noted above, it is not the presence of common questions that makes a case suitable for class resolution; it is "the capacity of a classwide proceeding to generate *common answers*" that governs the analysis.[13] The trial court's conclusion ignores the fact that these questions encompass factual and contractual contexts that necessarily vary across the class.[14] For example, answers to these questions could differ according to MCG's communications with individual plaintiffs, or particular explanations of benefits

---

[13] (Emphasis in original and supplied.) *Dukes*, __ U. S. __ (II) (A).

[14] See *Doctors Hospital Surgery Center, LP*, 307 Ga. App. at 49 (2) ("[B]ecause many individual suits would be necessary in this case even if the one or two common issues were resolved class-wide, we are constrained to conclude that the trial court abused its discretion in granting [the] motion for class certification.") (punctuation omitted); *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 190 (1) (653 SE2d 794) (2007) (In a pest control re-inspection case, "[e]ven assuming that the generalized evidence demonstrates that Orkin has a widespread problem with reinspection abuse, it does not follow that this evidence can establish that Orkin breached its duty to adequately reinspect the property of any given proposed member of the class.").

10

received by individual plaintiffs, or disclosures from employers about insurance plans.

For all of the reasons above, Perry and Weisman have failed to demonstrate that their claims satisfy the commonality requirement of OCGA § 9-11-23 (a) (2).[15] Accordingly, the trial court abused its discretion by certifying the class.

2. MCG also contends that the trial court erred by denying its motion for summary judgment as to Perry and Weisman's individual claims. As noted above, this Court's recent decision in *Kight* addressed MCG's lien practice in a similar case, but with potentially differing contractual, insurance, and coordination of benefit language. In the present case, the trial court ruled on the summary judgment question without the benefit of *Kight*, nor have the parties briefed that issue in this Court. We therefore remand the case for consideration of the summary judgment question in light of *Kight* and with respect to the contractual language remaining at issue in this case.

*Judgment reversed in part and case remanded. McFadden and Boggs, JJ., concur.*

---

[15] See *Rite Aid of Georgia, Inc.*, 315 Ga. App. at 576-578 (1) (a) (i) & (ii); *Rollins, Inc.*, 288 Ga. App. at 190 (1).